[No. 12211. In Bank. — January 21, 1888.]

## CHARLES R. GRAY, APPELLANT, *v.* JOHN C. DIXON, RESPONDENT.

UNITED STATES LANDS — POSSESSORY ACT OF APRIL 20, 1852. — The possessory act of April 20, 1852, in so far as it regulates the rights of parties in possession of public lands of the United States, was not repealed by title 8 of the Political Code, or by the act of March 3, 1874.

ID. — EJECTMENT BY PRIOR POSSESSOR — PARAMOUNT TITLE IN UNITED STATES. — A party in the prior possession of public lands of the United States, and who has complied with the requirements of the possessory act of April 20, 1852, may maintain an action of ejectment against a subsequent possessor, notwithstanding the title to the land is in the United States.

ID. — EVIDENCE OF COMPLIANCE WITH ACT. — In an action of ejectment for public land of the United States, by a person claiming to be entitled to the possession under the possessory act of April 20, 1852, evidence is admissible to show a compliance with the act, that the plaintiff had built a house upon the land, and the cost thereof, and that the defendant had torn down a part of the house.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order refusing a new trial.

The action was brought to recover the possession of certain land. The further facts are stated in the opinion of the court.

*Hargrave & Gray,* for Appellant.

*Curtis, Otis & Conner,* for Respondent.

PATERSON, J. — From the evidence offered by the plaintiff, it appears that, on December 4, 1885, plaintiff built a house upon and took possession of the north half of

southwest quarter and north half of southeast quarter
of section 8, township 2 south, range 4 west, San Ber-
nardino base and meridian.   On December 24, 1885, he
filed in the office of the county recorder an affidavit set-
ting forth the facts required by the act of April 20, 1852,
known as the possessory act.   Thereafter he caused the
lands to be surveyed, and posts to be put in the ground
at several points in the exterior boundaries, upon which
were nailed sheet-iron strips with the words painted
thereon, " Charles R. Gray's land."   These posts remain
where they were placed, but the land has never been
fenced.   When plaintiff settled on the land it was wholly
unoccupied and unimproved surveyed public land of the
United States.   In the winter of 1885–86, plaintiff plowed,
harrowed, and sowed ten acres in one portion of the tract,
one acre in another portion, and ten acres in still an-
other portion, from all of which crops were taken in
the summer following.   He also planted fruit-trees and
grape-vines upon the land, and dug a well thereon.   In
the following winter, for the purpose of raising another
crop, he plowed a portion of the land cultivated the year
prior.   The plaintiff testified that he was a citizen of the
United States, and owned no other land.   On September
7, 1886, the defendant served upon him a written de-
mand, which reads as follows:—

" SAN BERNARDINO, September, 7, 1886.
" MR. CHARLES R. GRAY.

" *Sir,* — I hereby notify you to vacate the north half
of southeast quarter and the north half of southwest
quarter of section 8, township 2, range 4 west, San Ber-
nardino meridian, as I have filed on the same, and wish
to occupy it myself.    JOHN C. DIXON."

Plaintiff did not vacate any land, but on the 9th of
September, 1886, defendant hauled lumber upon the
land, built a small dwelling-house thereon, and in Octo-
ber following took his family to live upon the land,
where they have ever since lived.   The defendant plowed

and sowed some of the land which plaintiff had cultivated in 1885.

The defendant offered no evidence.

It is claimed that the act of April 20, 1852, has been repealed by section 18 of the Political Code, inasmuch as title 8 of the Political Code "fully provides for the settlement, disposition of, and protection of the rights of the parties in possession of the public lands of the state of California." Section 18, *supra*, provides that " no statute, law, or rule is continued in force because it is consistent with the provisions of this code on the same subject, but in all cases provided for by this code, all statutes, laws, and rules heretofore in force in this state, whether consistent or not with the provisions of this code, unless expressly continued in force by it, are repealed and abrogated." Title 8 does fully provide for the protection of the rights of parties in possession of lands belonging to the state, and for the settlement and disposition of such lands, but in no wise attempts to regulate the rights of parties in possession of public lands of the United States. Neither does the act of March 3, 1874, affect the rights of claimants who have not filed pre-emption or homestead applications. The laws referred to apply only to those claims which are connected with the paramount source of title. Our attention has not been called to any act or to any section of the code which brings the possessory act of 1852 within the provisions of section 18 of the Political Code. It is, therefore, we think, applicable to cases of this kind.

Again, it is said that "even were the act not repealed, it would, we submit, be altogether inoperative in so far as it might effect any lands of the United States. The legislature of this state would certainly not have power to confer upon a settler upon the lands of the United States constructive possession of any parcel of such land." But it is too late now to raise such objection to

the act.   The general rule that the plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of his adversary's, and that it is sufficient in defense of such action to show that the title is in a third person, has always been restricted in this state. Owing to the anomalous condition of things arising out of our peculiar mining and agricultural interests, the origin of titles and the delays caused in securing final confirmations of grants of land by those claiming under a former sovereign, it was seen early in the history of the state that confusion must follow if the general rule referred to were enforced.   The larger portion of the mining lands within the state belonged to the United States. Mining was the principal industry.   Actions for possession of mining claims upon the public lands became numerous, and it was very soon perceived that if proof of the paramount title of the government would operate to defeat such claims, disaster must follow.   It therefore came to be the rule, as stated by Mr. Chief Justice Field in *Hubbard* v. *Barry*, 21 Cal. 325, that "the owner of the true title not objecting or consenting to the possession of either of the parties, the court regards the better right, as between the parties, to be vested in the first possessor and grantees claiming through him.   The rule rests upon its necessity for the preservation of peace and quiet in a country where titles to tracts of land, measured by leagues, are under consideration by the tribunals of the United States, and there is an indisposition, in numerous instances, on the part of claimants to assert their legal rights against the occupants until the final action of those tribunals."   The reason of this rule has not ceased, neither should the rule itself.

Plaintiff offered to show that he built a house upon the lands, and the cost thereof.   Defendant objected, and his objection was sustained.   This was error.   Plaintiff was required to show a compliance with the statute which required improvements upon the land to the value of two

hundred dollars within ninety days after the date of the record. The evidence would have tended, in connection with other evidence introduced without objection, to show that the act had been complied with; and was admissible also to show the character of plaintiff's possession,—his dominion over the lands adjoining the house.

It was also error to exclude evidence showing that defendant had torn down part of plaintiff's house. The erection and occupation of the house by plaintiff was an important element in determining the character of his possession, and any interference therewith was important in determining the question of ouster. The possessory act provides (sec. 6) that "the possession or possessory right of the plaintiff shall be considered as extending to the boundaries embraced by the claim of such plaintiff, so as to enable him or her, according to section 3, to have and maintain any action as aforesaid, without being compelled to prove an actual inclosure."

Judgment reversed, and cause remanded for a new trial.

McKINSTRY, J., TEMPLE, J., SEARLS, C. J., McFARLAND, J., and SHARPSTEIN, J., concurred.