STEAD et al. v. CURTIS et al.

(Circuit Court of Appeals. Ninth Circuit. October 2, 1911. On Rehearing, December 4, 1911.)

No. 1,899.

1. JUDGMENT (§ 445*)—GROUNDS FOR EQUITABLE RELIEF—FRAUD.

A court of equity will not entertain jurisdiction of a suit between the same parties to set aside a judgment or decree for fraud, unless such fraud was extrinsic or collateral to the matter tried, and did not inhere in any matter actually presented and considered by the court in rendering the decision assailed.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 841–844; Dec. Dig. § 445.*]

2. WILLS (§ 225*)—SUIT TO VACATE PROBATE OF WILL.

In those states where jurisdiction to probate wills is vested in a specified court, and ample provision is made for notice and contest, and interested parties are required to appear within a definite time, without which appearance the probate is made final and binding, a suit in equity will not lie to vacate the probate, and in such case a federal court is without jurisdiction to interpose in the premises.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 225.*]

3. WILLS (§ 271*)—PROCEEDINGS FOR PROBATE—VALIDITY—NOTICE.

Under Code Civ. Proc. Cal. § 1294 et seq., providing for the probate of wills in the superior court, which is vested with probate jurisdiction by the state Constitution, and requiring the publication of notice before the petition for the probate of a will is heard, but further providing that at any time within one year after probate a petition may be filed by any person in interest to contest the validity of the will or its probate, a defect in the preliminary notice does not render the probate void, especially where the parties adversely interested appear pursuant thereto, and contest the will before probate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 626; Dec. Dig. § 271.*]

4. WILLS (§ 319*)—PROCEEDINGS FOR PROBATE—ADJOURNMENTS.

In contested proceedings for the probate of a will, the court did not lose jurisdiction because adjournments of the hearing were not to a day certain, which was, at most, a mere irregularity.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 319.*]

5. WILLS (§ 130*)—REQUISITES AND VALIDITY—"HOLOGRAPHIC WILL."

Under Civ. Code Cal. § 1277, providing that a holographic will is one that is "entirely written, dated and signed by the hand of the testator himself," and that it "may be made in or out of this state and need not be witnessed," as construed by the Supreme Court of the state, such a will dated simply, "Oct. 1st, 1896," is sufficiently dated, although it does not state the place of its execution.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 336; Dec. Dig. § 130.*

For other definitions, see Words and Phrases, vol. 4, pp. 3321–3322.]

On Rehearing.

6. STATUTES (§ 167*)—WILLS (§ 256*)—PROCEEDINGS TO SET ASIDE PROBATE—JURISDICTION UNDER CALIFORNIA STATUTE.

By Act March 3, 1862 (Hittell's Gen. Laws Cal. § 2605), it was provided that "the district court shall have full power in all cases to set aside a will obtained by fraud or undue influence * * * and to set aside a decree of any probate court admitting to probate any supposed

will, when such decree has been obtained by fraud, concealment or forgery." At that time the general equity jurisdiction was vested in district courts and the probate jurisdiction in county courts. Subsequently, by statutory and constitutional provisions, all jurisdiction in both equity and probate was vested in superior courts, and the district and county courts were abolished. In 1872 all the state Codes were revised, and it was provided (Code Civ. Proc. § 18) that "no statute, law or rule is continued in force because it is consistent with the provisions of this Code on the same subject, but in all cases provided for by this Code all statutes, laws and rules heretofore in force in this state, whether consistent or not with the provisions of this Code, unless expressly continued in force by it, are repealed and abrogated." The provision of Act 1862 was not carried into the revision, nor into a second revision in 1901, but both provide for the probating of wills in the superior court and for proceedings in the same court which admits a will to probate for contesting the will or for setting aside the probate, to be instituted within one year. *Held* that, under the settled rule that where a statute is revised and some parts are omitted, and it was clearly the intention to cover the whole subject by the revision, the omitted parts cannot be revived by construction, but are to be considered as annulled, the effect of the revision of the California Codes was to repeal the omitted provisions of the act of 1862, leaving in the superior court in which a will is probated, sitting as a court of probate, exclusive jurisdiction to set aside such probate in proceedings in conformity with the Code.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 242, 243; Dec. Dig. § 167;* Wills, Cent. Dig. § 591; Dec. Dig. § 256.*]

Appeal from the Circuit Court of the United States for the Northern District of California.

Suit in equity by Catherine D. Stead, Horace W. Philbrook, as administrator with the will annexed, of the estate of Joseph P. Wilson, deceased, Serena K. Wilson, Elizabeth A. Burgan, and Franklin S. Burgan, as her husband, Ellwood J. Wilson, Martha E. Dowell and George W. Dowell, as her husband, and Joseph P. Wilson, Jr., against Isabella M. Curtis and John M. Curtis, as her husband, Elizabeth M. Muir Mugan and William G. Mugan, as her husband, John M. Curtis, William G. Mugan, the Jacob Z. Davis Estate Company, Jean McGregor Boyd, Jean McGregor Boyd, as trustee of the trust estate created by herself and Alexander Boyd, deceased, George Davis Boyd, Henry St. Clair Boyd, Edward W. Hopkins, John F. Boyd, the Rosenblatt Company, E. Martin & Company, Maurice Rosenthal, the Regents of the University of California, and the Board of Trustees of the Leland Stanford, Jr., University. Decree for defendants, and complainants appeal. Affirmed.

The amended bill of complaint herein shows the following: Jacob Z. Davis died October 28, 1896, leaving neither wife nor lineal descendants, but there survived him Catherine D. Stead, a niece, and Joseph P. Wilson and Jacob D. Wilson, nephews, the children of a deceased sister, who were his only next of kin. Jacob D. Wilson died November 10, 1896, leaving surviving him Elizabeth V. Wilson, his widow, and four children, all above the age of 21 years, namely, Samuel S. Wilson, Jacob D. Wilson, Annie C. Childs, and Elizabeth Bonifas. Elizabeth Bonifas died July 18, 1906, leaving surviving her John D. Bonifas, her husband, and one son, Albert W. Bonifas. Joseph P. Wilson died since the institution of this suit, and Horace W. Philbrook is the administrator of his estate with will annexed. His heirs are Serena K. Wilson, his widow, Elizabeth A. Burgan, married to Franklin S. Burgan,

Ellwood J. Wilson, Martha E. Dowell, married to George W. Dowell, and Joseph P. Wilson, Jr. It is alleged that Catherine D. Stead, Joseph P. Wilson and Jacob D. Wilson became, at the death of Davis, the owners each of an undivided one-third of all the property of which Davis died seised and possessed, and the heirs of such of said parties as are now deceased are entitled to the interest of their ancestors in such property. At the time of the death of Davis he was an equal partner with one Alexander Boyd, under the firm name of Boyd & Davis, and Boyd was the owner as tenant in common in equal shares of all the property of which Davis died seised and possessed, except his residence and household furniture. Jean McGregor Boyd was the reputed wife of Alexander Boyd, and they together on April 12, 1899, purchased with the money of the firm of Boyd & Davis a certain piece of real property, and on March 29, 1901, so purchased another piece, both of which are now held and possessed by Jean McGregor Boyd. The defendants Belle Curtis and Lizzie Muir, the latter of whom married Mugan, are sisters and of no blood relation to Davis, and Jean McGregor Boyd is their aunt, being a sister of their mother.

These facts appearing, it is thereupon further alleged: That about the 16th day of September, 1896, when Davis was contemplating a trip to Philadelphia, Pa., Belle Curtis and Lizzie Muir, and their husbands, and Jean McGregor Boyd, entered into a wicked conspiracy among themselves to seize upon and appropriate the property of Davis. That Belle Curtis and Lizzie Muir accompanied Davis East, and continued to travel with him until he died in the city of Philadelphia. That, in furtherance of said conspiracy, the said parties at some time between September 16 and November 16, 1896, secretly and fraudulently made and produced a certain writing in similitude of the handwriting of Davis, in language as follows: "Oct. 1st, 1896. I, Jacob Z. Davis, will and bequeath everything I have in this world to my beloved nieces Lizzie Muir and Belle Curtis. Jacob Z. Davis." And pretended that the same was the holographic will of Jacob Z. Davis. That on said November 16, 1896, Belle Curtis and Lizzie Muir produced said pretended will in the superior court of the state of California in and for the city and county of San Francisco, and by petition filed in said court prayed that said paper be admitted to probate. That thereupon notice was issued by the clerk that Monday, November 30, 1896, had been appointed by the court as the time for proving the will and the issuance of letters testamentary to petitioners. That on November 30th the cause was transferred to J. V. Coffey, judge of department 9, for hearing and all further proceedings. That the proof of the publication of said notice was filed in court, but that it was not verified by the party making it. That Catherine D. Stead and Joseph P. Wilson by their attorneys appeared in court on November 30, 1896, and Elizabeth V. Wilson likewise appeared May 15, 1897, and filed their opposition to the probate of said instrument, alleging that it was a forgery, whereupon the petitioners replied, and the cause was tried before a jury. That on August 16, 1897, the jury returned a verdict finding' that the instrument purporting to be the last will and testament of Jacob Z. Davis was entirely written and signed by his own hand, and was his genuine will. That on the day following said will was admitted to probate, and Lizzie Muir and Belle Curtis were appointed administratrices with will annexed. That from and after the 30th day of November, 1896, adjournments were taken from time to time by the court until July 22, 1897, but that no adjournment was taken to a day certain from that date, the court being adjourned and the cause continued until the ——— day of July, at ——— hour, the court convening again for the hearing of said cause on Monday, August 16, 1897. This as it appears from the record. But it is further alleged that said petition was heard in and by said court on divers days, but that no order or act of any kind was at any time given or made postponing the hearing to any day later than August 16th aforesaid, and that on that date the matter concerning said petition was adjourned without day and dropped absolutely; that the petitioners caused to be drawn on the jury four persons whose names were not regularly on the jury list, three of whom voted favoring the validity of the will, one,

with two others of the panel voting against; that the said Belle Curtis, Lizzie Muir, and Jean McGregor Boyd, in pursuance of said conspiracy, caused perjured testimony to be introduced at said trial, and suppressed and caused to be suppressed certain other relevant and pertinent testimony to prove that said paper was not the genuine will of decedent; that Jean McGregor Boyd, through taking advantage of the mental weakness of Alexander Boyd, her husband, and by undue influence, caused the latter on April 27, 1898, to convey to her by a certain trust deed all his interest in the property of the firm of Boyd & Davis; that about the 1st day of May, 1898, the said Belle Curtis, Lizzie Muir, and Jean McGregor Boyd, in further pursuance of the conspiracy, caused three deeds to be carried by the hand of one of the attorneys appearing for contestants in the proceeding to establish and probate the said pretended will of Davis, one to Catherine D. Stead, one to Joseph P. Wilson, and the other to Elizabeth V. Wilson, wife, and Samuel S. Wilson, Jacob D. Wilson, Jr., Annie C. Childs, and Elizabeth Bonifas, heirs of Jacob D. Wilson, deceased, for their execution, releasing to Belle Curtis and Lizzie Muir all and each of their right, title, and interest in and to the estate of Davis, deceased, and that said attorney caused them to execute each of said deeds, whereupon, on or about the 23d day of June, 1898, said deeds were delivered to the grantees, and by them recorded; that the consideration paid by Belle Curtis and Lizzie Muir for said conveyances was the sum of $100,000, of which one-half was paid to the attorneys of the grantors, and, after paying the expenses of litigation, the balance, consisting of $37,500, was paid to them, and that the $100,000 was a part of the estate of Jacob Z. Davis, deceased; that thereafter, by partial distributions made from time to time by order of the court, the property of the estate of Davis, deceased, was wholly distributed and divided between the said Belle Curtis and Lizzie Muir, the last order of the court having been made and entered on May 4, 1904; that neither at the time of executing the deeds aforesaid, nor at any time since until the 25th day of June, 1906, did the said grantors in said deeds have any knowledge, notice, or information touching the alleged conspiracy to defraud them of their property and estate; that the said Belle Curtis, Lizzie Muir, and Jean McGregor Boyd have made divers divisions and distributions among themselves of the estate of Boyd and 'Davis, and the said Belle Curtis and Lizzie Muir have, with the funds of the Davis estate, purchased other real property, the same being particularly described, and are now in possession thereof.

The defendants named other than those alleged to be concerned in the conspiracy and their husbands are alleged to either own parcels of the property previously belonging to the Davis estate, or certain interests therein by way of leases, or to have liens thereon, all with constructive notice of the alleged fraud of the supposed conspiracy.

The plaintiffs pray a cancellation of the two deeds, one executed by Catherine D. Stead to Belle Curtis and Lizzie Muir, and the other by Joseph P. Wilson to the same parties; also, that the probate of the pretended will of Jacob Z. Davis be set aside and annulled; that the said will be declared void; and that plaintiffs be declared the owners and entitled to the possession of an undivided two-thirds of the property of which Davis died seised and possessed and of such as was subsequently purchased with the moneys of his estate, and for further relief.

Demurrers were interposed to the bill, and, being sustained, the plaintiffs appeal.

Horace W. Philbrook, for appellants.

J. C. Campbell, W. H. Metson, John S. Partridge, F. A. Cutler, Mountford S. Wilson, Charles H. Lovell, Charles Page, and C. Irving Wright, for appellees.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. The foregoing synopsis of the bill of complaint contains in a brief way all that is deemed material to the cause of suit. Many things are pleaded that seem to us to be wholly immaterial and irrelevant, not to speak of much that is scandalous and impertinent. But, waiving any objection to the bill on these grounds, we are to determine whether it states a cause of suit entitling the complainants to relief in equity in a federal court. Counsel for appellants have filed an exhaustive brief, consisting of 665 pages, in which every legal phase of the controversy, with a multitude and perhaps all of its collateral and incidental branches, is discussed. This we have carefully examined, but are convinced that the real questions involved are confined to narrow limits. The first pertains to a federal court entertaining jurisdiction in equity to set aside and annul the proceedings in the probate of the will of Jacob Z. Davis, deceased, on the ground that such probate was procured by perjury and false swearing, and by the willful suppression of pertinent and material testimony, and this after the estate has been wholly and entirely settled and the property fully distributed under the orders and final decree of the court admitting the will to probate. All the heirs and next of kin of the decedent are not seeking relief in this suit. The heirs of Jacob D. Wilson are not made parties in any capacity.

[1] It is settled doctrine of the Supreme Court that as between the same parties the court will not set aside a decree or judgment because it was founded upon a fraudulent instrument or perjured evidence, or for any matter actually presented and considered in the decree or judgment assailed. It is only for fraud, extrinsic or collateral to the matter tried, that a court of equity will interpose its jurisdiction to disturb the proceedings, as, for instance, where the testimony was accompanied by acts which prevented the complaining party from prosecuting to the court the merits of the case, or by which the jurisdiction of the court was imposed upon. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Vance v. Burbank, 101 U. S. 514, 25 L. Ed. 929; Steel v. Smelting Co., 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226. The holding is concretely stated by Mr. Justice Gray, as follows:

"The fraud which entitles a party to impeach the judgment of one of our own tribunals must be fraud extrinsic to the matter tried in the cause, and not merely consist in false and fraudulent documents or testimony submitted to that tribunal, and the truth of which was contested before it and passed upon by it." Hilton v. Guyot, 159 U. S. 113, 207, 16 Sup. Ct. 139, 40 L. Ed. 95.

The reason assigned for the rule, as stated by Mr. Justice Miller in United States v. Throckmorton, supra, is:

"That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

If it be questioned that the proceeding in the superior court to probate the alleged will of Davis was a suit inter partes, it was manifestly

one in effect, if not in technical arrangement. The document was offered for probate. Notice was given fixing the time for hearing objections thereto, and the parties or their predecessors now appearing as complainants appeared and contested the will on the ground, among other things, that it was a forgery, so that there was presented a direct controversy between substantially the same parties and their privies as are now litigating in the present suit. So it would seem that the doctrine of the Supreme Court should have application to bar the right of recovery here, on the ground that this is an attempt to annul the probate of Davis' will for matters that were presented and heard in the court of probate. Conceding, but without deciding, that the rule and doctrine were applicable, the Supreme Court of the state of California in Langdon v. Blackburn, 109 Cal. 19, 41 Pac. 814, a case setting up fraud and conspiracy to prevent even the attendance of the contestants in opposition to the probate of the alleged will, held that a suit would not lie by the contestant to annul the probate.

[2] We do not rest the case here, however. There is yet a broader principle, the application of which prevents the complainants from maintaining the present suit. It is that as a general rule a court of equity will not interpose jurisdiction by a bill to set aside a will or the probate thereof. This rule is said to obtain in the courts of both England and America. The rule is subject to an exception in those states where by statutory authority or by custom the probate of a will may be challenged by independent suit for forgery or fraud attending its execution and probate. In such jurisdictions the federal courts will adopt the remedy obtaining by local statute and custom, and entertain a suit to obviate the effect of probate. But in those states where probate jurisdiction is vested in a specified court, and ample provisions are made for notice and contest, and interested parties are required to appear within a definite time, without which appearance the probate is made final and binding, a suit in equity will not lie to vacate the probate. The grounds upon which the principle rests are that the proceeding is essentially one in rem, and not inter partes, and that all the world is concluded where the provisions of the law are substantially observed, and the judgment of probate is taken in pursuance thereof.

Where such a suit will not lie in equity, it will not lie in the federal courts to disturb the finality of probate. The principle thus stated is adequately supported by authority. See Carrau v. O'Calligan, 125 Fed. 657, 60 C. C. A. 347; Case of Broderick's Will, 21 Wall. 503, 22 L. Ed. 599; Farrell v. O'Brien, 199 U. S. 89, 25 Sup. Ct. 727, 50 L. Ed. 101; Tilt v. Kelsey, 207 U. S. 43, 28 Sup. Ct. 1, 52 L. Ed. 95; Waterman v. Canal-Louisiana Bank Co., 215 U. S. 33, 30 Sup. Ct. 10, 54 L. Ed. 80.

Mr. Justice Moody has lucidly and cogently stated the reasons for the finality of judgment in probate in Tilt v. Kelsey, just cited, as follows:

"When the owners of property die, that property, under the conditions and restrictions of the law applicable, is transmitted to their successors named by their wills, or by the laws regulating inheritance in cases of intestacy. For a suitable time it is essential that the property should remain under the

control of the state, until all just charges against it can be discovered and paid, and those entitled to it as new owners can be ascertained. It is in the public interest that the property should come under the control of the new owners, after such delays only as will afford opportunity for investigation and hearing to guard against mistake, injustice, or fraud. It is the duty of the sovereign to provide a tribunal, under whose direction the just demands against the estate may be determined and paid, the succession decreed, and the estate devolved to those who are found to be entitled to it. Sometimes this duty is performed by conferring jurisdiction upon a single court, and sometimes by dividing the jurisdiction among two or three courts. The courts may be termed ecclesiastical, probate, orphans', surrogate, or equity courts. The jurisdiction may be exercised exclusively in one, or divided among two or more, as the sovereign shall determine. But somewhere the power must exist to decide finally as against the world all questions which arise in the settlement of the succession. Mistakes may occur and sometimes do occur, but it is better that they should be endured than that in a vain search for infallibility questions shall remain open indefinitely. As was said by Mr. Justice Bradley, speaking on this subject in Broderick's Will, 21 Wall. 503, p. 519: 'The world must move on, and those who claim an interest in persons and things must be charged with knowledge of their status and condition, and of the vicissitudes to which they are subject. This is the foundation of all judicial proceedings in rem.' It is therefore within the power of the sovereign to give to its courts the authority, while settling the succession of estates in their possession through their officers, the executors or administrators, to determine finally as against the world all questions which arise therein."

The principle was early declared to obtain in the state of California. State of California v. McGlynn, 20 Cal. 233, 81 Am. Dec. 118. But whether it is applicable, having in view the present statutory provisions for probate, is a question for inquiry. By the Constitution of the state of 1879 (section 5, art. 6) the superior court is given original jurisdiction "of all matters of probate," and by section 4 of the same article the Supreme Court is given appellate jurisdiction "in all such probate matters as may be provided by law." The Code of Civil Procedure provides specifically how and in what cases jurisdiction may be exercised for the probate of wills (sections 1294, 1295); what shall be set forth in the petition for probate (section 1300); for setting down the petition for hearing, fixing the time thereof, and giving notice for such hearing (section 1303); for serving the notice specifying the manner of service and the proof thereof (section 1304); for hearing proof of will after proof of service unless the parties appear (section 1306); and designates the proceeding where there is no contest (section 1307). Thereupon the procedure further prescribes that:

"When a will has been admitted to probate, any person interested as provided in section thirteen hundred and fourteen may, at any time within one year after such probate, contest the same or the validity of the will. For that purpose he must file in the court in which the will was proved, a petition in writing, containing his allegations against the validity of the will, or against the sufficiency of the proof, and praying that the probate may be revoked." Section 1327.

"Upon filing the petition, and within one year after such probate, a citation must be issued to the executor of the will, or to the administrator with the will annexed, and to all the legatees and devisees mentioned in the will, or to their personal representatives, if any of them are dead, requiring them to appear before the court on some day therein specified, to show cause why the probate of the will should not be revoked." Section 1328.

"At the time appointed for showing cause, or at any time to which the

hearing is postponed, proof having been made of service of the citation upon all of the persons named therein, the court must proceed to try the issues of fact joined in the same manner as an original contest of a will." Section 1329.

"On written demand of either party, filed three days prior to the hearing, a trial by jury must be had as in cases of the contest of an original petition to admit a will to probate. If, upon hearing the proofs of the parties, the jury finds, or if no jury is had, the court decides, that the will is for any reason invalid, or that it is not sufficiently proved to be the last will of the testator, the probate must be annulled and revoked." Section 1330.

"If no person, within one year after the probate of a will, contest the same or the validity thereof, the probate of the will is conclusive; saving to infants and persons of unsound mind a like period of one year after their respective disabilities are removed." Section 1333.

Thus is constituted a court which is given original jurisdiction "of all matters of probate," and is devised a procedure that prescribes a specific manner of acquiring jurisdiction for the probate of wills, the manner of notice and proof thereof, and of contest; and, further, a remedy by contest of the probate by any interested persons within one year after such probate. Then it is declared that, if no person contests the probate of the will or the validity thereof within one year thereafter, the probate is conclusive. The contest of probate is in the same court as the original probate is had, and is the only remedy prescribed whereby a rehearing or a readjudication of the matters in probate may be had, and it seems is exclusive of any other procedure for attacking the validity of the will or its probate in original form. It was so held in Farrell v. O'Brien, supra, under the statutes of Washington, which are similar in their enactment, and not more explicit and comprehensive in conferring exclusive jurisdiction upon the court as it respects probate matters than those of California. It follows, therefore, under the authorities, that equity is without jurisdiction to interpose for the relief of complainants by a readjudication touching the validity of Davis' will or of the probate thereof had in the superior court. This being so, the federal court is likewise without jurisdiction to interpose in the premises.

[3] It is next insisted that the probate is void and ineffectual because it appears that the affidavit of publication of notice of hearing under the petition for probate was not sworn to by any one. To this there are two conclusive answers: First, the parties plaintiff, or their predecessors, appeared by their attorneys in response to the notice given and filed their contest, basing it upon very much the same grounds as are now assigned for revoking the probate, and declaring the will a forgery, save as it is claimed that evidence adverse to the validity of the will, known to the legatees, was suppressed. The parties by appearance waived all requirements of notice. Thenceforth the proceeding, as it concerned the parties contestant, was virtually, one inter partes, and as to them notice was of no further efficacy. And, second, despite the provision for notice as a prerequisite to the original probate, there yet remained the statutory right to assail the regularity and validity of both the will and the probate thereof, and for this complainants had one year after the preliminary probate to appear and enter a contest. This right existed "wholly irrespective,"

says Mr. Chief Justice White, "of whether the notice on preliminary probate had or had not been given?" As to the sufficiency of the notice, it has been held by the Supreme Court of California in two cases involving this very estate of Davis that the shortness of the period of constructive notice to nonresident heirs does not deprive them of due process of law, seeing that ample provision is made by which a contest may be had of the probate within one year with like effect as if the contest were had prior to probate. Estate of Davis, 136 Cal. 590, 69 Pac. 412; In re Davis' Estate, 151 Cal. 318, 86 Pac. 183, 90 Pac. 711, 121 Am. St. Rep. 105. See, also, Farrell v. O'Brien, supra.

[4] Again, it is urged that the court lost jurisdiction for the reason that the record does not show that the court adjourned the hearing on the petition on one or more occasions to a day certain. At most, this is a mere irregularity, not affecting jurisdiction in any way. In re Davis' Estate, supra.

[5] Lastly, it is strenuously urged that the supposed will is void upon its face because not dated as contemplated by the statute providing for the execution of holographic wills. Section 1277 of the Civil Code of California defines such a will as follows:

"A holographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not be witnessed."

The date consists simply of the words and figures, "Oct. 1st, 1896," and it is the contention of counsel for plaintiffs that, unaccompanied with any mention of place, it is no date, and therefore that the will is not dated as required by statute, and for that reason is void.

It is not deemed essential to go into an academic discussion of the term "date," whether it comprises in its component parts place as well as time, for it appears that almost ever since the statute of California defining a holographic will was adopted the courts of the state have been admitting wills, and many of them, to probate bearing the date only, unaccompanied by any mention of place whatever. It will be borne in mind that the act defining the term "holographic will" was adopted in 1872. Now, in January, 1878, we find the Supreme Court of the state approving a will dated simply "January 30th, 1875." Estate of Barton, 52 Cal. 538. Again, in March, 1889, a codicil dated, "Witness my hand this twenty-ninth day of April, 1886," was approved. In re Soher, 78 Cal. 477, 21 Pac. 8. In August, 1889, a deed bearing simply a date, without mention of place, was construed as a will. In re Skerrett, 80 Cal. 62, 22 Pac. 85. In October, 1904, the court approved a holographic will bearing date, "May twenty-fifth, eighteen hundred and fifty-nine." Estate of Fay, 145 Cal. 82. So in November of the same year the Supreme Court held that a holographic will commencing with the words "Property of S. W. Clisby, October 1, 1902," followed by a list of his property, and giving all of his property to his wife, was sufficiently dated. Estate of Clisby, 145 Cal. 407, 78 Pac. 964, 104 Am. St. Rep. 58. And in Estate of Plumel, 151 Cal. 77, 90 Pac. 192, 121 Am. St. Rep. 100, decided April, 1907, a codicil was sustained which bore date simply "Jan. 14, 1904."

· Indeed, the Davis estate has been several times, under different titles, to the Supreme Court, and has so far met with the approval of that court.

Now, while it is true that the direct proposition that place is a composite part of time in a date was never specially presented or directly decided by the Supreme Court of California, yet in practical effect a date . without the mention of place has been uniformly regarded in court and out of court as a sufficient dating of a holographic will. Aside from the cases mentioned wherein holographic wills having no different kind of date have been approved and established, it is safe to assume that many such wills have been established and probated from which no appeal has ever been prosecuted, and that property rights of large proportions have come to be dependent upon their validity. Practically, therefore, a construction of the statute which regards the date without mention of .place as sufficient to the validity of a holographic will has come to be essentially a rule of property, and we would hesitate long before disturbing that view of the question.

Beyond this, there is good authority for the position that the date is complete without mention of place. Joseph Fuentes et al. v. Myra Clark Gaines, 25 La. Ann. 85, and Succession of Robertson, 49 La. Ann: 868, 21 South. 586, 62 Am. St. Rep. 672.

We conclude, therefore, that the demurrer to the bill was properly sustained, and the decree of the circuit court will be affirmed.

## On Rehearing.

[6] Counsel in a petition for rehearing calls to mind that the court has not answered his contention that equity possesses jurisdiction in the state of California to set aside a will obtained by fraud or undue influence, and as well a decree of the probate court admitting a supposed will to probate when the same has been obtained by fraud, concealment, or perjury, by virtue of an act adopted by the Legislature of the state March 3, 1862, found in Hittell's Gen. Laws Cal. p. 358, which reads as follows:

"The district court shall have full power, in all cases, to set aside a will obtained by fraud or undue influence, and to declare null and void any paper purporting to be a last will, and to set aside a decree of any probate court admitting to probate any supposed will, when such decree has been obtained by fraud, concealment or perjury, and to establish a will lost or destroyed."

The·act in which the provision is found is entitled, "An act amendatory of the foregoing act of April 30, 1855." The act of April 30. 1855, is entitled, "An act amendatory of and supplementary to the foregoing act of May 4, 1852." The act of May 4, 1852, is entitled "An act concerning escheated estates." So that the act in question, which contains six sections, the fourth comprising the provision above quoted, relates to escheated estates. The provision seems not to be germane to the subject, but it is a part of the act. Now, it is urged that this statute has never been repealed, and remains in full force and effect, but that the superior court has succeeded to the jurisdiction of the district court.

The courts to which the general equity jurisdiction in California is now accorded are called "superior courts." There need be no discussion of that proposition. At the time of the adoption of the statute in question the courts possessing general equity jurisdiction were known as "district courts." The probate jurisdiction was then delegated to the "county courts." So that there was, under the scheme of government in California, a complete separation of the courts possessing equity jurisdiction from those having probate cognizance. In 1872 there were adopted by the Legislature of the state of California four several acts—one to establish a Code of Civil Procedure, one a Civil Code, one a Penal Code, and one a Political Code—all of which took effect at 12 o'clock noon of January 1, 1873. The purpose of the acts was to secure a complete revision of all the Codes and statutes of the state under legislative authority. By the revision of the Code of Civil Procedure (Deering's Code Civ. Proc. § 65), it appears that superior courts then existed by virtue of the Constitution of the state. Article 6, § 6, Const. Cal. By the Code superior courts were accorded jurisdiction (1) in all cases in equity, and (4) " * * * of all matters of probate, * * * and of all such special cases and proceedings as are not otherwise provided for." Section 76. They were in reality courts of general jurisdiction, with such special jurisdiction as was conferred upon them by statute. County courts with probate jurisdiction were entirely superseded by the superior courts, possessing both equity and probate jurisdiction. In these Code Revisions the statute in question was omitted from the statutes relating to escheated estates; nor does it seem to have been carried elsewhere into the new Codes.

On May 7, 1879, a new Constitution was ratified by the people of the state. Under that Constitution the judicial power of the state is in the Senate sitting as a court of impeachment, a supreme court, superior courts, justices' courts, and such inferior courts as the Legislature may establish in any incorporated city or town, or city and county. Section 1, art. 6. Under it also the superior courts are given jurisdiction in all cases in equity and of all matters of probate. Section 5, art. 6. Thus, it appears by the latter section, there was carried into the Constitution what formerly obtained as statutory provisions only.

By another act approved March 8, 1901, which became effective July 1, 1901, the Codes were again revised "by amending certain sections, repealing others, and adding certain new sections." Pomeroy's Code Civ. Proc. Cal. § 1. The statute in question was not carried into these Codes. By section 18 of the Code Revisions of 1872, it is provided that:

"No statute, law, or rule is continued in force because it is consistent with the provisions of this Code on the same subject; but in all cases provided for by this Code, all statutes, laws, and rules heretofore in force in this state, whether consistent or not with the provisions of this Code, unless expressly continued in force by it, are repealed and abrogated." Deering's Code Civ. Proc. § 18.

Now, it is claimed that the statute relied upon does not fall within the designation "in all cases provided for by this Code"; hence that

it was never repealed.   Counsel cites in support thereof Hemstreet v. Wassum, 49 Cal. 273; Whitaker v. Haynes, 49 Cal. 596; Gray v. Dixon, 74 Cal. 508, 510, 16 Pac. 305; Carpenter v. Jones, 121 Cal. 362, 364, 53 Pac. 842.   A reading of these cases indicates that the court has applied the general rule of construction that a statute is not to be deemed to be repealed by implication, unless the subject-matter is so completely covered by the new statute as that the new and the old cannot stand together by reason of repugnancy.

There is another rule of construction relative to repeals by implication, as well settled as this, and equally potent in its operation. It is:

"Where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act."   District of Columbia v. Hutton, 143 U. S. 18, 27, 12 Sup. Ct. 369, 372 (36 L. Ed. 60).

The quotation is from United States v. Tynen, 11 Wall. 88, 92 (20 L. Ed. 153).

The rule is stated by the Supreme Court of Oregon thus:

"If the new statute revises the whole subject-matter of an existing law, and is plainly intended as a substitute therefor, it will operate as a repeal of the old law, even though it contains no express provision to that effect."   Reed v. Dunbar, 41 Or. 509, 512, 69 Pac. 451, 452.

And such is the rule in California.   Mack v. Jastro, 126 Cal. 130, 58 Pac. 372.

It has cogent application in cases of revisions of codes and statutes.   On this subject Mr. Endlich, in his work on Interpretation of Statutes, § 202, says:

"The rule seems, indeed, to go further, and to work an implied repeal in all cases in which a general revision of the old law is made by the Legislature, with an intent to substitute the new legislation for the old.   Upon this principle it has been applied to codifications; whilst, on the other hand, the repealing effect of revising statutes and codifications has been frequently limited to such matters embraced in the old law as were omitted in the new, or permitted to operate only in cases of manifest repugnancy, and not beyond the immediate object of the codification, and even a failure to incorporate a statute in a revision was held not to be a repeal of it, where the act directing the revision declared that 'all acts * * * in force at the commencement of the * * * session * * * shall be * * * continued in full force and effect, unless * * * repugnant to the acts passed or revised' at the same.   But the general rule seems to be that statutes and parts of statutes omitted from a revision are to be considered as annulled, and are not to be revived by construction."

A comprehensive but concise statement of the principle is contained in 36 Cyc. 1079, 1080:

"It is a familiar and well-settled rule that a subsequent statute, revising the subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former to the extent to which its provisions are revised and supplied.   The rule is applicable even when the provisions of a prior law are contained in a special act.   Where there is such revision, there need be no express words of repeal.   Neither is it required that the later statute shall be so repugnant to the former that both cannot stand and be construed together.   But it must appear that the subsequent statute revised the whole

subject-matter of the former one, and was evidently intended as a substitute for it. Where a statute is revised, some parts of the original act being omitted, the parts which are omitted cannot be revived by construction, but are to be considered as annulled, provided it clearly appears to have been the intention of the Legislature to cover the whole subject by the revision."

It is our opinion that this latter rule of construction, touching the interpretation of statutes and their repeal, has application here. There was a reconstruction of the courts, the district courts being superseded by the superior courts, and the county courts with probate jurisdiction abolished. The courts being thus constructed and constituted in matter of jurisdiction, the superior courts, under the Revision of the Codes, were accorded jurisdiction in all cases in equity and in probate matters, thus acquiring in this respect the combined jurisdiction of the old district and county courts. Henceforth the superior courts were to exercise cognizance over both equity and probate matters. In this reconstruction of the courts, and in defining and fixing their jurisdiction, the subject-matters of equity and probate jurisdiction and cognizance were necessarily treated of, and the idea is persuasive that it was intended to cover the entire ground. Furthermore, the adoption of the new Constitution of 1879, and the more recent Revision of 1901, were legislative interpretations of the effect of the Revision of 1873 pertaining to the subjects of equity and probate jurisdiction, and there was no attempt by either to enlarge the equity jurisdiction so as to give the superior courts cognizance to annul the probate of a will, or to set aside any order or decree of the superior courts pertaining to the probate of wills. This view is even strengthened by the language of section 1327, Deering's Code Civ. Proc., which, after making provision for persons interested to appear and contest the probate of a will within one year after such probate, reads:

"For that purpose he must file in the court in which the will was proved a petition in writing," etc.

The Legislature thus evinces an intendment that the superior court sitting in probate should have the exclusive jurisdiction in the premises.

So that, construing the several acts of the Legislature together, and considering the constitutional provisions of 1879 relative to the construction and reconstruction of the courts, and the jurisdiction finally accorded to the superior courts of both equity and probate matters, together with the fact that the statute in question was dropped out by the revisers and wholly eliminated from all the Codes, it would seem that the intendment of the Legislature was to repeal the statute in question. The subject-matter to which it pertains was fully dealt with by the subsequent legislation, and in our opinion the statute was repealed thereby, it becoming a case provided for by the Code, within the intendment of section 18, supra. More than 35 years have elapsed between the date of the first revision and the institution of this suit, and no case has been produced wherein it has been sought to invoke the statute relied on, which in itself is strong reason for supposing that it was repealed. It is very true that an old statute long since

dormant does not stand repealed, nor is it rendered inoperative by nonuse. But the fact that it has never been applied or invoked, being remedial, for a long period of time, is indicative of a common interpretation that it has been repealed, and the interpretation is rendered the stronger where there has long since been a general revision of the entire Codes and laws of the state.

This disposes of the first ground assigned in the petition for rehearing. The second ground urged is but an element of the fraud sought to be set up in the bill of complaint.

It is complained that the court has not stated the fact fully relative to the alleged fraud of the petitioners Belle Curtis and Lizzie Muir in procuring certain men confederates of theirs to be impaneled upon the jury. We certainly deemed the statement full enough to show the alleged fraud by necessary and indubitable inference. We now incorporate counsel's version of what was alleged in the bill upon the subject, as contained in his petition for rehearing. It is that:

"While the jury was being impaneled, the petitioners, Belle Curtis and Lizzie Muir, and their confederates in the conspiracy, by secret fraud caused four of their confederates to be four of the twelve persons who composed the jury. They did this as follows: None of the said four was in fact among the list of jurors, nor was the name of any of them in the box of names of jurors; but the said four were in the courtroom and were there seated among the persons summoned to be chosen as jurors. When the jury was being impaneled, the clerk of the court, having been secretly bribed by the conspirators, pretended to draw from the said box, and thereupon called as jurors the names of the said four along with other names that were in fact in the box. The said four, as their names were thus fraudulently called, and being secretly in the plot, responded to their names as jurors, and, concealing the fraud by their false and cunning answers, became four of the twelve persons who composed the supposed jury, and thereupon throughout the pretended trial sat as members of the jury, and secretly were in fact throughout the trial the fraudulent confederates of Belle Curtis and Lizzie Muir, the petitioners for the probate. The law of California permitted nine of the jury to render the verdict. On the rendition of the pretended verdict, only nine persons on the jury assented to it. Among those nine were three of the said four confederates of the petitioners. The fourth of the four confederates declared that he dissented from the verdict; but he did so only for the following actual reasons: He was the last of the twelve jurors inquired of, he had already heard the answers of the nine who gave the jury's verdict, and he declared his dissent only because he saw that his vote was not needed, and as a further cover for his fraudulent presence as a member of the jury."

The statement, however, in this form does not change the basis of the court's consideration; nor does it affect the result reached. It was ascertained in the main opinion that suit will not lie in equity to set aside the probate of a will, and that covers the matter of fraud here sought to be availed of, in whatsoever form it might be alleged, as well as the other elements of fraud sought to be set up, and the ground of contention must fall with it.

The same is true of the fifth ground urged for rehearing. The third and fourth grounds suggested are fully discussed in the main opinion, and do not need further notice.

The petition for rehearing will be denied.