[S. F. No. 4316. Department One.—May 21, 1906. In Bank.—May 21, 1907.]

In the Matter of the Estate of JACOB Z. DAVIS, Deceased. LAURA E. TRACY et al., Appellants, v. LIZZIE MUIR, and BELLE CURTIS, Respondents.

ESTATES OF DECEASED PERSONS—PETITION FOR DISTRIBUTION—COLLATERAL ATTACK UPON PROBATE OF WILL—FRAUD.—A petition for distribution of the estate of a deceased person is an independent and wholly distinct proceeding from that of the probate of the will of the decedent; and an attack made under such petition by heirs upon the probate of the will, on the ground of forgery and fraud in the procurement, is not direct but collateral. Whatever may be the jurisdiction of equity to grant relief from fraud, the collateral attack upon the will upon distribution cannot be sustained, if the probate thereof is not void upon its face for want of jurisdiction.

ID.—CONCLUSIVENESS OF INDEPENDENT STEPS IN ADMINISTRATION.—Each independent step in the course of administration of the estate of a deceased person from which an appeal may be taken may become finally conclusive against inquiry upon any subsequent independent step in the course of such administration.

ID.—NOTICE OF HEARING OF PROBATE—SUBSEQUENT HEARING AND PROBATE—ADJOURNMENTS NOT APPEARING—IRREGULARITY.—Where the probate of the will was had upon a hearing eight months after the time noticed for the hearing, and the record fails to show adjournments of the hearing, such subsequent hearing and probate was at most an irregularity in the exercise of jurisdiction acquired by the notice, which did not render the probate of the will void upon its face.

ID.—PRESUMPTIONS IN FAVOR OF ACTION OF SUPERIOR COURT.—The superior court, when dealing with probate matters, is to be considered a court of general jurisdiction; and the same presumptions attach to its acts as to any other action or proceeding over which it has jurisdiction. The presumption is that everything was done that was necessary to sustain the action of the court; and where the record is silent the presumption is that that was done which was requisite to sustain the jurisdiction.

ID.—RECITALS IN ORDER ADMITTING WILL TO PROBATE.—The recitals in the order admitting the will to probate, that the petition came on regularly for hearing, and that notice had been given as required by law, are sufficient to justify the presumption that orders for adjournment of the hearing were made, where the contrary does not affirmatively appear from the record.

ID.—PROCEEDING IN REM — CONSTRUCTIVE NOTICE TO NON-RESIDENT HEIRS—CONSTITUTIONAL LAW.—The probate of a will is a proceeding strictly *in rem*; and the provision for brief constructive notice of the hearing is not against public policy, nor unconstitutional as against non-resident heirs, who have a full year in which to contest the will.

ID.—DISTRIBUTION UNDER WILL — HEIRS NOT INTERESTED — PETITION PROPERLY STRICKEN OUT.—The probate of the will being valid, distribution was properly made thereunder; and the petition of heirs for distribution who have no interest under the will was properly stricken out. The striking out of their petition for want of interest did not deprive them of their day in court, they having had their hearing upon the question of their right to attack the probate of the will upon the facts alleged in their petition.

SUPREME COURT—JURISDICTION—HOW ACQUIRED—LOSS OF TRANSCRIPT.—The supreme court acquires jurisdiction of an appeal for all purposes immediately upon the filing of the notice of appeal in the lower court, and its jurisdiction is not divested nor suspended either on account of the failure to file a transcript on appeal, or by the loss or destruction of the transcript after it is filed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco distributing the estate of a deceased person.  J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

William T. Baggett, F. H. Gould, Horace W. Philbrook, and W. J. Bartnett, for Appellants.

Campbell, Metson & Campbell, and Thomas H. Breeze, for Respondents.

SLOSS, J.—Appeal from decree of settlement of final account and final distribution.

Jacob Z. Davis died on October 28, 1896.  On November 16, 1896, Lizzie Muir and Belle Curtis presented to the superior court of the city and county of San Francisco a paper purporting to be the holographic will of said Davis and filed a petition praying for its admission to probate.  The document bore date October 1, 1896, and by its terms purported to give and bequeath all of Davis's property to the petitioners, Lizzie Muir and Belle Curtis.  On the filing of the petition, the clerk fixed Monday, the thirtieth day of November, 1896, and the courtroom of said superior court as the time and place for proving the will, and for hearing the application for letters.  The notice was duly published as required by section 1303 of the Code of Civil Procedure.  On November 30, 1896, Joseph P. Wilson and Catherine Stead, claiming to be heirs of said decedent, appeared and filed an opposition to the probate of the alleged will on various grounds.  On May 15, 1897, Elizabeth Wilson, also claiming to be an heir, filed her opposition to the probate.  The petitioners filed answers to both oppositions.  While other grounds of opposition were pleaded, the real point raised by those opposing the probate was that the alleged will was a forgery.  A trial was had before a jury, which on August 16, 1897, returned a verdict in favor of the genuineness of the document, and thereupon an order was made by the court admitting the said paper to probate, and directing the issuance to Lizzie Muir and Belle Curtis of letters of administration with the will annexed.  On April 8, 1898, the superior court made

a decree of partial distribution, distributing to Lizzie Muir and Belle Curtis the sum of fifteen thousand dollars. On June 23, 1898, the order admitting the will to probate and the decree of partial distribution, appeals from which had been taken, were by this court affirmed. On the same day a petition to revoke the probate, filed by Catherine Stead, Joseph P. Wilson, Elizabeth V. Wilson, and her four children, was dismissed and denied. The affirmances of the order and decree appealed from and the dismissal of the contest were made by the consent of all parties who had then appeared, a compromise having been effected as between them.

On September 7, 1900, Laura E. Tracy, claiming to be a niece of the decedent, filed a contest and petition for revocation of the probate of the will. She had not been a party to the oppositions and contests above mentioned, and had in no way theretofore appeared in the proceedings relating to the probate of the administration of the estate. Her petition alleged, in substance, that at the time of Davis's death, October 28, 1896, she (the petitioner) was living in the republic of Hawaii, then a foreign country, and had no knowledge of the fact that her uncle had been residing in San Francisco, or of his death, or of the probate proceedings, until after September 15, 1899; that soon thereafter she discovered these facts, and, further, that the document admitted to probate was not the will of Davis, but was a forgery, executed by some person or persons pursuant to a conspiracy entered into between Lizzie Muir, Belle Curtis, and others for the purpose of gaining possession of Davis's estate. She further alleged that in execution of this conspiracy the paper was offered for probate, and that upon the trial of the oppositions filed by Joseph P. and Elizabeth Wilson and Catherine Stead the conspirators fraudulently procured names of three persons not regularly drawn to be included in the panel of jurors selected for the trial of the oppositions; that these three persons, so chosen by themselves, were accepted and served as members of the jury, and that by their efforts and in consequence of perjured testimony offered on behalf of the proponents, a verdict was returned by nine of the jurors including the three fraudulently serving, finding the paper to have been entirely written, signed, and dated by the hand of Jacob Z. Davis. Upon demurrer by the administra-

trices and beneficiaries, the petition was dismissed. Laura E. Tracy, the petitioner, appealed from the order dismissing her contest, and on June 20, 1902, this court affirmed the order appealed from. (*Estate of Davis,* 136 Cal. 590, [69 Pac. 412].)

On April 20, 1904, the administratrices filed their final account, accompanied by a petition for distribution. Upon the hearing of the petition Laura E. Tracy and the parties to the contest of June 22, 1898, (comprising all the parties who had originally opposed the probate of the will or contested it after probate,) appeared and filed an answer to the petition and a petition for distribution to themselves. In their pleading, in addition to allegations showing them to be heirs of the decedent, they repeated substantially the allegations of the petition of Laura E. Tracy for revocation of probate. The administratrices moved that the answer and petition be stricken from the files of the court upon the ground that a will had been admitted to probate under which they were sole legatees and devisees. The court, taking judicial notice of and considering the prior proceedings in the estate, as above enumerated, granted the motion, and, declining to permit the said alleged heirs to be heard or to participate in the proceedings, made its decree settling the final account and distributing the residue of the estate remaining in the hands of the administratrices to Lizzie Muir and Belle Curtis. It is from this decree that the present appeal is taken.

It is plain that if the probate of the alleged will of Jacob Z. Davis was regular, and if such probate was conclusive upon the appellants, the respondents are the only parties entitled to share in the distribution of the estate, and the appellants have no interest in such estate. The position of the appellants is therefore that the attempted admission to probate of the paper (which, as they allege, was a forgery) was fraudulent; that, apart from any fraud, the order admitting the will to probate was without jurisdiction and void for want of notice to the appellant Tracy; and that they are entitled to raise these objections on this proceeding for distribution.

It may be well at this point to consider the nature of the attack so made on the probate of the will. Is it direct or collateral? The proceeding for probate had terminated some-

six years before, in an order admitting the alleged will to probate. The attack now under discussion was made in response to a petition for distribution, a proceeding not having for its purpose the probate of the will, but entirely distinct in its scope. It is true that both proceedings, the petition for probate and the petition for distribution, related to the same estate. But the procedure of this state contemplates in the administration of the estates of deceased persons a series of different proceedings, each of which is, as to the matters embraced within its purview, separate. And an adjudication as to each step in this series is intended to be final in its nature, and not subject to review in a subsequent stage of the administration of the estate. Thus, an order appointing an administrator may be appealed from (Code Civ. Proc., sec. 963), or may be revoked on petition in certain instances (Code Civ. Proc., sec. 1383). But it cannot be said that an attack on an order appointing an administrator should, after the lapse of the time for appeal, be termed direct merely because made in some proceeding connected with the administration of the same estate,—for example, on the settlement of an account, or an application for confirmation of a sale of real estate. So with other proceedings in the course of the administration of the estate, where the order or judgment made is appealable, such as orders admitting wills to probate, orders settling accounts of administrators or executors, or the like. Each can be attacked directly by appeal, or by some motion authorized by law for the purpose, or, perhaps, by bill in equity, but an attack made in a different proceeding in the same estate would clearly be collateral. Thus, in *Estate of Devincenzi,* 119 Cal. 498, [51 Pac. 845], it was held that an objection to a confirmation of sale of real estate, on the ground that the administrator's petition for the order of sale was defective, was a collateral attack upon the order of sale. In principle, the present case does not differ from the one cited. While the opposition of appellants contained a prayer that the order admitting the will to probate be annulled and set aside, this was a mere incident of the relief sought in the proceeding for distribution, and the attack on the probate cannot be regarded as direct. The cases cited by appellants in which this court held that a motion to set aside a judgment as void was a

direct and not a collateral attack (*People* v. *Greene*, 74 Cal. 400, [5 Am. St. Rep. 448, 16 Pac. 197]; *People* v. *Pearson*, 76 Cal. 400, [18 Pac. 424]; *Reinhart* v. *Lugo*, 86 Cal. 395, [21 Am. St. Rep. 52, 24 Pac. 1089]), were all cases where the motion was made in the case in which the judgment had been rendered by a party appearing for that purpose, not, as here, where the setting aside of the judgment complained of was merely a part of the relief sought in a different proceeding.

In the case at bar the distinction between direct and collateral attack is important in view of the settled rule that in a collateral attack upon a judgment of a court of general jurisdiction the judgment can be impeached only for a want of jurisdiction appearing upon the face of the judgment-roll; or, as sometimes stated, on collateral attack only a judgment which is void on its face may be set aside. (*People* v. *Thomas*, 101 Cal. 571, [36 Pac. 9]; *In re Eichhoff*, 101 Cal. 600, [36 Pac. 11].)

This brings us to a consideration of the objections urged against the order in question.

First. It is claimed that the order admitting the will to probate was void as to the appellant Tracy, who had not appeared, for the reason that the hearing was not had on the day specified in the original notice, and the record does not show any order or orders continuing the hearing to the time, some eight months later, when the alleged will actually came up for proof. Section 1306 of the Code of Civil Procedure provides for the hearing of testimony in proof of the will "at the time appointed for the hearing, *or the time to which the hearing may have been postponed.*" It is argued that if the proof be not heard at the time specified in the notice, and no order is made continuing the hearing to some other time, a discontinuance results, and a new notice must be given in order to vest the court with jurisdiction to entertain the petition. This court has held in *Estate of Warfield*, 22 Cal. 51, [83 Am. Dec. 49], that where a notice of time and place of probating a will was given, the failure to adjourn the hearing from the time fixed in the notice to a later day when the matter was in fact taken up, was, "at most, an irregularity, occurring after jurisdiction had been acquired." We see no reason for departing from the rule

so declared, but even if the defect complained of were to be regarded as jurisdictional, we could on this collateral attack look only to the record, which does not show affirmatively that the hearing was not regularly continued. The superior court, when dealing with probate matters, is to be considered a court of general jurisdiction, and the same presumptions attach to its acts as in any other action or proceeding over which it has jurisdiction. (*Burris* v. *Kennedy,* 108 Cal. 331, [41 Pac. 458].) The record here shows that a petition for probate of will was filed, that the clerk's notice fixing November 30, 1896, as the time for proving the will was published as required by law, that on August 17, 1897, the court made an order which, after reciting that the petition came on regularly for hearing and that it had been proved that notice had been given as required by law, admitted the will to probate. It does not appear affirmatively, apart from these recitals, that the hearing was continued from March 30, 1896, by the court; neither does it appear that it was not. The presumption is that everything was done that was necessary to sustain the action of the court. "The rule in this respect is, that where the record recites that which was done nothing to the contrary may be presumed; but where the record is silent the presumption is that that was done which was requisite to sustain the jurisdiction." (*Estate of Twombley,* 120 Cal. 350, [52 Pac. 815].) We find no provision in our statutes indicating that any orders continuing the hearing form a necessary part of the judgment-roll or "technical record." But even if they do, their absence would not invalidate the order admitting the will to probate. At most, the record is silent on the question of whether such orders were made, and in the case of a court of general jurisdiction, when a judgment "comes in question collaterally, service will be presumed when the record is silent." (Van Fleet on Collateral Attack, sec. 830.) If, as contended by appellants, such orders form a part of the notice to which parties interested are entitled, the recitals in the order admitting the will to probate, that the petition came on regularly for hearing, and that notice had been given "as required by law," are sufficient to justify the presumption that such orders were made, where the contrary does not affirmatively appear from the record.

(*People* v. *Davis*, 143 Cal. 673, [77 Pac. 651]; *Sacramento Bank* v. *Montgomery*, 146 Cal. 745, [81 Pac. 138].)

This case does not come within the rule that where a service appearing in the record is insufficient it will not be presumed that any different and other service was made. This rule "has no application where the record does not purport to show *all* that was done, and the judgment states that all that was necessary to be done was done." (*Sacramento Bank* v. *Montgomery*, 146 Cal. 745, [81 Pac. 138].)

Second. It is urged that inasmuch as Laura E. Tracy was at the time of Davis's death domiciled in the republic of Hawaii, and as the then existing means of communication between said republic and this state rendered it impossible for her to have seen the published notice in time to enable her to appear and oppose the probate on the day set for the hearing, there was in fact no notice to her, and the statute fixing the time for publication (Code Civ. Proc., sec. 1303) is, as to non-resident heirs so situated, unconstitutional in that it deprives them of their property without due process of law. The same proposition was urged by the appellant Tracy on her appeal from the order dismissing her petition to revoke the probate of the will. In affirming the order this court said (136 Cal. 596, [69 Pac. 414]): "It is next asserted that the statute providing for constructive notice is unconstitutional in this, that the ten days herein provided is too short to serve as constructive notice to the world, and *that the period of time being so short* therefore the statute is unreasonable and consequently void. As before suggested, the proceeding as to the probate of a will is essentially one *in rem,* and in the very nature of things the state is allowed a wide latitude in determining the character of the constructive notice to be given to the world in a proceeding where it has absolute possession of the *res.* It would be an exceptional case where a court would declare a statute void, as depriving a party of his property without due process of law, the proceeding being strictly *in rem,* and the *res* within the state, upon the ground that the constructive notice prescribed by the statute was unreasonably short. It would seem that very few cases of that kind could be found in the books. Certainly this is not one of them. Public policy demands that a will shall have a speedy probate, and the legislature,

recognizing that fact, has given the heir, by express enact-
ment, one year after probate has been decreed within which
time he may attack the will. His rights are in no way con-
cluded by the decree of probate. He has an entire year there-
after in which to attack the will, and he may attack it upon
the same grounds and for the same reasons that he could
attack it prior to its probate. Even the measure of evidence
demanded of him for a successful attack is no different in
the two cases. It is thus apparent that in such a case as
the one presented here, due process of law was in no degree
denied Laura Tracy upon the hearing.'' We have no dispo-
sition to depart from the rule there laid down. The point
was elaborately argued and carefully considered. Whether
or not this be a proper case for applying the doctrine of
*"res adjudicata"* or that of the "law of the case," we are
satisfied with the conclusion reached, and adhere to it.

Third. The contention that the order should be set aside
for fraud in the procuring of a jury may be answered briefly
in view of our determination that the attack is collateral.
It is well settled, as hereinbefore stated, that upon such at-
tack only the jurisdiction of the court can be inquired into,
and, as to jurisdiction, only such defects as appear on the
face of the judgment-roll. Of course, the alleged fraud does
not so appear. Whether the appellants could avail them-
selves of this ground of attack in a suit in equity to set aside
the probate is another question (see *State* v. *McGlynn*, 20
Cal. 234, [81 Am. Dec. 118] ; *Langdon* v. *Blackburn*, 109 Cal.
19, [41 Pac. 814]), which need not be decided here, since
this does not purport to be such a proceeding.

It follows that the trial court rightly held that on this
petition for distribution the probate of the will was conclusive
on all parties. Necessarily, then, the persons claiming to
be heirs had no interest in the proceeding, since they were
not beneficiaries under the will. It is claimed that they
were deprived of a hearing by the striking out of their
pleading. . But they were heard on the question of whether
or not their pleading should be stricken out, and this involved
the essential point in controversy,—i. e. whether, assuming
the truth of all facts alleged by them, they were in a position
to attack the probate of the will. If they were not in such
position, they had no standing to oppose the distribution

sought, and were not injured by the striking out of their opposition and petition for distribution to themselves. The effect of the order was the same as that of an order sustaining a demurrer, without leave to amend. We do not think the case comes within the principle of *Windsor* v. *McVeigh*, 93 U. S. 280, and *McVeigh* v. *United States*, 11 Wall. 266, cited by appellants. There a defendant's answer had been stricken out and his default entered for some reason collateral to the merits of the action. Here the pleading is stricken out because on the face of the record it appears that the appellants are not parties entitled to resist respondents' petition, and are not, on their own showing, entitled to have any affirmative relief on their own petition. It cannot be said that the appellants were in any substantial sense denied a hearing, when they were fully heard on the only question involved— viz. their interest in the estate. The language of the court in *Griff* v. *Dalsheimer*, 88 Va. 508, [13 S. E. 993], is applicable, viz.: "They, however, had their day in court, and they were not arbitrarily put out of court, and denied an opportunity to make defense, as was the defendant in the celebrated McVeigh case."

The judgment is affirmed.

Angellotti, J., and Shaw, J., concurred.

Subsequent to the issuance of the *remittitur* in pursuance of the foregoing judgment, the appellants made a motion to vacate the decision and judgment and to recall the *remittitur*, on which the following opinion was rendered on the twenty-first day of May, 1907:

LORIGAN, J.—This is a motion to vacate the decision and judgment of this court rendered on appeal in the above cause, and to recall the *remittitur*.

It appears from the showing made in support of the motion that a duly certified and printed transcript of the record on appeal in the cause was filed in this court on June 1, 1905; that thereafter briefs were filed, and on February 27, 1906, the cause, being regularly set down on the calendar for hearing on that day, was argued orally by the attorneys for the respective parties and submitted in

Department One of this court for decision; that during the earthquake and consequent conflagration in the city of San Francisco in April, 1906, the office of the clerk of this court, with its contents, including the certified transcript on appeal in this case, was destroyed; that no order has ever been made by this court restoring such transcript, nor has such record in fact been restored; that on May 21, 1906, a month after such record was destroyed, the justices of Department One of this court, before whom the cause had been argued and submitted on February 27, 1906, signed and filed with the clerk of this court a decision in the cause, affirming the decree of the trial court, and on June 23, 1906, the clerk issued a *remittitur* in the case.

It is the claim of appellants on this motion that the decision and judgment of this court, having been made against them after the transcript on appeal had been destroyed by fire and without any restoration of it, is void.

We cannot agree with this view. The jurisdiction of this court on appeal is not determined by the presence or absence of a copy of the record from the trial court—the transcript on appeal. It acquires that jurisdiction immediately upon the filing of the notice of appeal in the lower court; acquires it for all purposes, and it is not divested of its jurisdiction, nor is such jurisdiction suspended, either on account of the failure to file a transcript on appeal, or the loss or destruction of it after it is filed. It is true the statute provides for a certification to this court of the record made in the trial court and upon which the appeal to this court is to be heard, but that has nothing to do with conferring jurisdiction upon this court over the appeal. That is acquired as soon as the notice of appeal is filed, and this court may exercise such appellate jurisdiction long before any transcript is filed, and independent of it. It may dismiss the appeal, stay execution in the court below, or stay further proceedings therein, and make all necessary orders in aid of the appeal. The transcript on appeal is but the statutory method of bringing to the attention of the court the particular proceedings and matters which took place in the trial court and which this court is asked to review, and this is the sole purpose and function of the transcript. As supplemental to the statute requiring such certification

of the original record of the trial court to this court, our rules require that a certain number of copies, in addition to the original, shall be filed with the clerk of this court. These are vouched for by the appellant in each case as true copies, and, in this particular case, were in the possession of the court when its decision was made. We simply mention this as indicating that, while the original transcript in this case was destroyed, still duplicate copies, which had been filed with the original, were in the possession of the court when the case was under consideration and decided. Independent of this, however, we do not see how the fact of the destruction of the original transcript in any manner affected the jurisdiction of the court to dispose of the appeal. Our jurisdiction was not acquired by the filing of the transcript, and was not suspended by its destruction. That transcript was on file when the cause was argued and submitted for decision. As the only scope and purpose of the transcript is to present to the court the points involved in the appeal, it had served its purpose with the submission of the cause. In the subsequent preparation of its opinion the court could rely upon its memory of the points involved as presented in the original transcript, or refer to any copy of such transcript on file under the rules. As the filing of the transcript was not necessary to confer jurisdiction upon this court, neither was its continued existence necessary in order to authorize this court to render its decision on submission of the cause.

The motion is denied.

Shaw, J., Henshaw, J., Beatty, C. J., Sloss, J., and Angellotti, J., concurred.

Rehearing denied.