STEAD et al. v. CURTIS et al.

(Circuit Court of Appeals, Ninth Circuit.    May 5, 1913.    Rehearing Denied July 7, 1913.)

No. 1,899.

1. WILLS (§ 257*)—JURISDICTION OF ACTIONS RELATING TO WILLS—CALIFORNIA STATUTE—CONSTITUTIONALITY.

Act March 3, 1862 Cal. (Hittell's Gen. Laws, § 2605), providing that "the District Court shall have full power to set aside a will obtained by fraud or undue influence * * * and to set aside a decree of any probate court admitting to probate any supposed will when such decree has been obtained by fraud, concealment or perjury," was void in view of Const. Cal. 1849, art. 6, which created county courts with exclusive probate jurisdiction with the exception that issues of fact joined therein were triable in the District Court, and Const. 1862, art. 6, which eliminated the provision for trial of issues of fact in the District Court, leaving the county courts with exclusive jurisdiction of all matters of probate, necessarily including the determination of issues of fraud and undue influence arising in proceedings for probate of wills, and leaving the District Courts, as courts of general equity jurisdiction, without power to review probate decrees.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 592, 593; Dec. Dig. § 257.*]

2. WILLS (§ 257*)—DECREE PROBATING WILL—JURISDICTION TO SET ASIDE.

Civ. Code Cal. § 2224, providing that "one who gains a thing by fraud. * * * undue influence * * * or other wrongful act, is * * * an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it," cannot be held to enlarge the jurisdiction of courts of equity as such, to include the power to set aside the decree of a probate court admitting a will to probate on the ground of fraud.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 592, 593; Dec. Dig. § 257.*]

3. WILLS (§ 225*)—SUIT TO SET ASIDE PROBATE—EQUITY JURISDICTION.

That jurors who were disqualified sat on the trial of an issue involving the validity of a will in a probate court, or that they committed perjury to escape successful challenge, affords no ground of equity jurisdiction to set aside the decree admitting the will to probate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 547; Dec. Dig. § 225.*]

4. EVIDENCE (§ 82*)—JUDICIAL PROCEEDINGS—PRESUMPTIONS OF REGULARITY.

In courts of record presumptions of regularity are indulged, and, juris-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

diction being once acquired, it will be presumed that the parties had due notice of all subsequent proceedings.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 104; Dec. Dig. § 82.*]

5. **WILLS (§ 423*)—SUIT IN EQUITY TO SET ASIDE PROBATE—WANT OF JURISDICTION—EVIDENCE.**

Code Civ. Proc. Cal. §§ 1303, 1306, provide that where a will is offered for probate the clerk shall fix a time for hearing and give notice by publication, and that unless the parties appear the court "must require proof that the notice has been given." No particular form of proof is prescribed, nor is there any requirement that it shall be placed on record in any prescribed form. *Held,* that a recital in a judgment of a superior court admitting a will to probate, that it was proved to the satisfaction of the court that notice of the hearing had been given as required by law, raises a presumption in favor of the jurisdiction of the court which is not overcome by the presence in the record of an unverified affidavit of publication which does not exclude the reception of evidence not recorded.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 911–913; Dec. Dig. § 423.*]

6. **WILLS (§ 225*)—PROCEEDINGS FOR PROBATE—JURISDICTION AND VALIDITY.**

By the statutes of California the superior court is vested with general jurisdiction in probate matters. They provide that on the filing of a petition for probate of a will notice shall be published and copies mailed to heirs resident in the state at their places of residence, if known to the petitioner; that "unless the parties appear the court must require proof that the notice has been given, which being made the court must hear testimony in support of the will" (Code Civ. Proc. §§ 1303, 1306): that notwithstanding the probate any party in interest may institute a contest of the will in the same court within one year thereafter, and if no such contest is made the probate shall be conclusive, saving to infants and persons of unsound mind the right to contest within one year after removal of the disability (sections 1327, 1333). *Held* that, in view of such provisions, where qualified persons appear to contest a will, the court has power to entertain and proceed with such contest and to determine whether valid notice has been given to all parties in interest, and that an error in such decision is not jurisdictional, but is an irregularity in procedure subject to review only on appeal or by motion in the proceeding itself; that a final judgment in such contest adverse to the contestants constitutes a valid estoppel against them which precludes them from questioning the validity of the will or the probate thereof in a collateral attack.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 547; Dec. Dig. § 225.*

Probate jurisdiction of federal courts, see note to Bedford Quarries Co. v. Thomlinson, 36 C. C. A. 276.]

7. **PLEADING (§ .17*)—CONSTRUCTION—SUFFICIENCY OF ALLEGATION.**

The allegation in a pleading of circumstances which may, but do not necessarily, point to an ultimate fact, does not amount to an averment of such fact.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 38, 41, 195, 350; Dec. Dig. § 17.*]

On rehearing. Affirmed.

For former opinion, see 191 Fed. 529, 112 C. C. A. 463.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Horace W. Philbrook, of San Francisco, Cal., for appellants.

John S. Partridge, of San Francisco, Cal., for appellees Jean Mc-Gregor Boyd and others.

J. C. Campbell, W. H. Metson, F. C. Drew, C. H. Oatman, J. A. MacKenzie, and Walter Shelton, all of San Francisco, Cal., for appellees Isabella M. Curtis and others.

C. Irving Wright, of Oakland, Cal., and Charles Page, of San Francisco, Cal., for appellees Edward Hopkins and John F. Boyd.

Mountford S. Wilson and Charles H. Lovell, both of San Francisco, Cal., for appellee Board of Trustees of Leland Stanford Junior University.

F. A. Cutler, for appellee Regents of University of California.

Before GILBERT and ROSS, Circuit Judges, and DIETRICH, District Judge.

DIETRICH, District Judge.  The manner in which the questions arise, and the principal facts involved, are disclosed in the original opinion and the opinion upon petition for rehearing (191 Fed. 529, 112 C. C. A. 463); a formal preliminary statement will therefore be dispensed with.  Subsequent to the entry of the order denying a rehearing, the court, yielding to the appellants' insistent claim that their contentions were misunderstood, and that an opportunity should be given for further oral argument, vacated the order and granted a rehearing; the whole case has now been resubmitted.

At the conclusion of a comprehensive summary of the contents of the bill and an analysis of the voluminous brief filed in support of their appeal, the appellants, in their petition for rehearing, assert that the record exhibits "five independent grounds, on each of which and by virtue of the law, the pretended judgment of probate," to vacate which the suit was brought, should be declared void and set aside.  In the main we have chosen to confine our consideration to these five several grounds, and shall pursue the order in which they are stated and discussed in the petition.

[1] First. The first point is strictly jurisdictional, and is of primary importance; it is the question whether or not, in the state of California, a court, in the exercise of its general equity jurisdiction, may set aside a judgment of probate for fraud.  For the sake of clearness it may be briefly stated that under the California Constitution of 1849 probate jurisdiction was vested in what were called county courts, and general equity jurisdiction in district courts, and that under the present Constitution both branches of jurisdiction, while remaining distinct, are administered in what are now known as superior courts.  In re Davis' Estate, 136 Cal. 590, 69 Pac. 412.  We are here concerned only with general equity as distinguished from probate jurisdiction.  And as further defining the issue, it is to be noted that it is in no wise affected by the fact that the suit is prosecuted in a federal court; the requisite diversity of citizenship and value of the matter in dispute appearing, it is assumed that the jurisdiction of this court is, in the premises, quite as broad as that of a superior court.  The concrete question, therefore, is whether a superior court of the state of California may,

upon proper application, and in the exercise of its general equity jurisdiction, vacate a judgment in probate for fraud.

It is conceded to be a universal rule that in the absence of statutory authority equity does not set aside judgments of any kind for intrinsic fraud, and a general rule, that it will lay hold of and nullify judgments for extrinsic fraud. To this latter general rule, however, judgments in probate as a class constitute a widely recognized exception. The principle was stated in our opinion upon the former hearing (191 Fed. 534, 112 C. C. A. 463), and we then also held that in the California courts it was recognized as a part of the local law. Case of Broderick's Will, 21 Wall. 503, 22 L. Ed. 599; State v. McGlynn, 20 Cal. 233, 81 Am. Dec. 118. Upon further consideration, we find no reason to recede from this conclusion. We are unable to yield to the view that only intrinsic and not extrinsic fraud was considered in the McGlynn Case. The court entered upon an elaborate discussion, not of a general rule, but of an exception thereto, and if only intrinsic fraud was thought to be involved, the discussion was wholly gratuitous, for there was no contention, and probably could be none, that any judgment would be set aside for intrinsic fraud. In the concluding part of the opinion the court uses the following language:

"At the present day, it would not be a greater assumption to deny the general rule that courts of chancery may set aside judgments procured by fraud, than to deny the exception to that rule in the case of probate decrees."

Surely by "fraud," as the term is here employed, only fraud extrinsic was meant, for admittedly there was not then, nor has there ever been, any rule that courts of chancery will set aside judgments of any character for fraud intrinsic. While it may be conceded that in no subsequent decision has the California court expressed a wholehearted approval of the doctrine of this case, and upon the other hand has shown a disposition to limit its application to judgments admitting wills to probate, so far as we have been able to discover, the decision has never been modified or criticised, and must therefore be accepted as an authoritative declaration of the existing local law. Certain cases, of which Olivas v. Olivas, 61 Cal. 382, Baker v. O'Riordan, 65 Cal. 368, 4 Pac. 232, Sohler v. Sohler, 135 Cal. 323, 67 Pac. 282, 87 Am. St. Rep. 98, and Bacon v. Bacon, 150 Cal. 477, 89 Pac. 317, are representative, may, upon first glance, appear to be to the contrary, but upon analysis it will be seen that they do not extend to the probate of wills at all, but establish the rule only that where a decree of distribution is procured by fraud a court of equity will defeat the wrongdoer by impressing upon the property wrongfully distributed a trust in favor of the rightful heir or devisee. That this rule is not necessarily in conflict with the doctrine of the McGlynn Case is made plain by the following extract from the opinion in Bacon v. Bacon, supra:

"It is urged, with respect to the jurisdiction, that decrees of distribution, being a part of the same probate proceeding as the decree probating the will, must be governed by the same rule, and that, as in State v. McGlynn, 20 Cal. 234, 262, 81 Am. Dec. 118, and Kieley v. McGlynn (Broderick's Will), 88 U. S. (21 Wall.) 503, 22 L. Ed. 599, it was decided that decrees probating wills are not subject to review in equity for fraud or mistake, it would follow that a decree of distribution cannot be so reviewed. In view of the decisions we

have cited to the contrary, this proposition is clearly untenable. Further-more, the rule denying such power to review the probate of a will, while it is declared by the above decisions, and perhaps by the greater number of decisions elsewhere, is universally admitted to be an exception to the gen-eral rule that all final judgments are subject to such attack. The reasons given in support of the exception are generally declared in the opinions to be unsatisfactory and illogical, and the discussions usually end with the state-ment that, whether for good reasons or not, the exception is firmly estab-lished, and upon that ground must be adhered to. An exception so poorly supported by reason should not be extended to a new class of cases." See, also, Tracy v. Muir, 151 Cal. 363, 90 Pac. 832, 121 Am. St. Rep. 117.

But the contention pressed by appellants with the greatest confidence is that the rule of the McGlynn Case, assuming that we have rightly interpreted that decision, has been abrogated by express statute. While discussed in the opinion on petition for rehearing, the point es-caped notice in our original opinion, and we therefore consider it anew. The contention rests upon the assumption that section 4 of an act ap-proved March 3, 1862 (Stats. Cal. 1862, p. 27; Hittell's General Laws of California, p. 358), is a part of the existing statutory law of Califor-nia, and is valid. The section reads as follows:

"The district court shall have full power, in all cases, to set aside a will obtained by fraud or undue influence, and to declare null and void any paper purporting to be a last will, * * * and to set aside a decree of any pro-bate court admitting to probate any supposed will, when such decree has been obtained by fraud, concealment, or perjury, and to establish a will lost or de-stroyed."

The provision is comprehensive and explicit, and, if in force, un-doubtedly has the efficacy claimed for it. Its present validity, however, the defendants assail from two different standpoints. It is insisted: First, that when passed it was in violation of the state Constitution, and therefore void; and, second, that, waiving the question of its orig-inal invalidity, it has been repealed.

By article 6 of the Constitution of 1849, in force in 1862, district courts were established as courts of general jurisdiction both in law and equity, and county courts were invested with exclusive probate ju-risdiction, with the exception only that "all issues of fact joined in the probate (county) courts" were triable in the district courts. The dis-tinction between general equity and probate jurisdiction is well under-stood, and in the absence of special definition to the contrary it must be assumed that, as used in the Constitution, the terms "equity" and "probate" were intended to convey the meaning, and only the meaning, which they usually import. With the exception of the trial of issues of fact first joined in the county courts and thereafter remitted or re-ferred to the district courts, the jurisdiction of each tribunal, the one in matters of probate and the other in matters of general equity, was exclusive, and it was no more competent for the Legislature to confer probate jurisdiction upon the district courts than it was to confer gen-eral equity jurisdiction upon the county courts. Now it is plain, we think, that the subject-matter of the statutory provision under consid-eration is essentially of probate cognizance. True, it relates to fraud and undue influence, for which, generally speaking, equity grants re-dress; but the fraud with which the section deals is not fraud in gen-

eral, but fraud of a given species—that which pertains to wills, the adjudication of the validity of which was, by the Constitution, committed to the exclusive jurisdiction of the county courts. No one can for a moment doubt that if county courts were clothed with power to admit wills to probate, by intendment and necessary implication they had the authority, and it was their duty, to refuse probate to invalid wills, and hence to entertain issues of fraud and undue influence. In adopting the Constitution, therefore, it must have been fully contemplated that, not the district courts, but the county courts, would have the power to deal with, and to give relief against, frauds of this character.

That such issues, in so far as they involved only questions of fact, were not triable in the county courts, is immaterial to the present inquiry. Plainly the limited jurisdiction thus conferred upon the district court to try out issues of fact remitted to it from a county court was not tantamount to authority to entertain a plenary suit to determine the validity or invalidity of a will charged to have been procured through fraud or undue influence. The jurisdiction of the district court was ancillary to, and not in derogation of, that of the county court, and in every case, therefore, the judgment by which all questions touching the validity of an instrument purporting to be a will were to be finally determined and foreclosed was the judgment of the county court. However, an extended discussion of the effect of this peculiar provision of the Constitution of 1849 is needless, for in no view could it avail the plaintiffs at the present time. It was wholly eliminated by the amendments to article 6 of the Constitution, adopted in 1862, shortly after the passage of the statute under consideration, and exclusive jurisdiction in all matters of probate, without exception, was then conferred upon probate courts; and, to give effect to the amendments, appropriate legislation was enacted in 1863 purporting to define in detail the scope and extent of the jurisdiction of the several courts established by the Constitution. Constitution of California 1862, art. 6, §§ 6, 8; Stats. 1863, pp. 335, 338, 346. It follows, of course, that after these amendments were made there no longer remained with the district courts jurisdiction to try issues of fact joined in probate proceedings, and the statute of 1862 was of necessity abrogated in so far, if at all, as it depended for its validity upon the constitutional clause thus eliminated.

It is therefore thought that substantially the question presently under consideration is whether or not, with a Constitution conferring exclusive probate jurisdiction upon one court, it is competent for the Legislature to empower another court, clothed only with jurisdiction in general equity, to set aside wills obtained by fraud or undue influence, and to declare null and void any paper purporting to be a last will, and to set aside the probate judgments of the court constitutionally vested with probate jurisdiction, for fraud, concealment, or perjury. It will be observed that the statute is most sweeping in its terms and applies as well to intrinsic fraud as to fraud extrinsic and collateral. This is the construction contended for by counsel for appellants and therefore discussion is unnecessary. The conflict between the authority thus attempted to be conferred upon the district courts with,

the constitutional jurisdiction of the probate courts is so patent that to state the question is to answer it. Assuming the present existence of such a system, upon the death of a testate the devisees might, and indeed must, go into the probate court to establish the will, and at the same time the dissatisfied heirs charging fraud or undue influence might invoke the jurisdiction of the district court to nullify the will. In such contingency, which proceeding is to take precedence, and the judgment of which tribunal shall prevail? Or the heir might appear and try out the issue in the probate court, and, if there defeated, he might, at some indefinite time later, upon the mere averment that a witness had, in the probate proceeding, committed perjury, or that some fact had been concealed, secure a retrial of the issue in the district court. It is clear, we think, that the statute cannot stand by the side of the Constitution, and it must therefore be held that it was void from the beginning.

In reaching this conclusion we are not to be understood as necessarily abandoning the view, stated in the opinion upon the petition for rehearing, that the section was omitted from the Codes of 1872 with the intent that it should be repealed. While upon reconsideration we find no reason for a substantial modification of the position then taken, in consideration of the conclusive character of the constitutional objection, we do not deem it necessary to elaborate or restate our views upon the secondary question of repeal.

[2] It is also urged that the requisite jurisdictional authority for the maintenance of this suit, and for the nullification of a judgment in probate by a court of equity, may be found in section 2224 of the California Civil Code, which provides that:

"One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it."

The argument is that the term "thing," as here used, may include a probate decree, and that therefore if such a decree is procured by fraud the statute becomes applicable. But if assent be given to such a view, a judicial decree would in truth have a most precarious existence. The statute makes no distinction between extrinsic and intrinsic frauds, and confers as much authority in the one case as in the other. But it is thought that no such radical enlargement of equity jurisdiction as would necessarily follow the adoption of appellants' construction could have been contemplated or intended. It is to be noted that the section is not embraced in the Code of Civil Procedure, which has to do with remedies and the jurisdiction of courts, and the procedure therein. It purports only to define the substantive law, and was not intended to establish a new jurisdiction, but is only declaratory of an existing rule. The question here is not whether one who procures property by fraud or other wrongful act shall be permitted to enjoy the fruits of his wrongdoing; it is a question, rather, in what tribunal is lodged the authority to adjudicate the question of fraud, and whether, when a court constitutionally vested with power to make such inquiry has entertained and adjudged the issue, another tribunal

may vacate or nullify the judgment thus entered. The statutory provision was quoted in Wingerter v. Wingerter, 71 Cal. 105, 11 Pac. 853; but there is nothing in this decision from which it is fair to assume that the court deemed it to be an innovation upon the common or customary law.

[3] Second. The second ground is that by fraud the proponents of the will procured for four of their confederates places upon the jury which was selected to try the issues in the will contest; but, as observed in our former opinions, while this fraud may, and doubtless does, furnish good ground for complaint, it is in no sense an independent basis of jurisdiction. Apparently great importance is attached to the fact that in the complaint these jurors are called confederates and co-conspirators with the defendants; but there is no peculiar virtue in these epithets. The showing is that the jurors were disqualified, and nothing more, and the point simply involves the question of the effect upon a judgment of the participation by disqualified jurors in the trial of a case. It may be assumed that to escape successful challenge these jurors committed perjury of the most flagrant character; but, even so, while possibly differing in degree, the fraud does not essentially differ in kind from a case where a juror, upon being interrogated touching his qualifications, asserts that he is neutral as between the parties, when, as a matter of fact, he is a partisan of one or an enemy of the other, or has already made up his mind as to which side should prevail. To such perils the administration of justice is always and everywhere exposed, as it is to the possibility that sworn witnesses will conceal or pervert the truth. But, for reasons well understood, the general rule prevails that equity will not assume jurisdiction to set aside judgments so tainted, and, as we have already seen, there is in California no statute abrogating this rule. It is apparent therefore that, while this contention might serve as a ground for recovery if the court were authorized to grant relief, it neither furnishes an independent basis of jurisdiction nor fortifies the other grounds upon which the plaintiffs rely. Foreman v. Hunter, 59 Iowa, 550, 13 N. W. 659; Clark v. Drain Com'rs, 50 Mich. 618, 16 N. W. 167; Mize v. Americus, etc., 109 Ga. 359, 34 S. E. 583; Tracy v. Muir, 151 Cal. 363, 90 Pac. 832, 121 Am. St. Rep. 117.

Third. The third proposition presents distinctive considerations. In substance, it is that, for want of the requisite notice, the court acted without jurisdiction in admitting the will to probate, and, this fact appearing of record, the whole proceeding, including the decree of distribution, is ineffectual for any purpose. The argument is that, the probate proceedings being void upon their face, they may be wholly ignored, and that therefore the will, never having been proved, is without efficacy to pass title, and that the plaintiffs, as the heirs of the deceased, may recover the possession of the estate, which the defendants wrongfully hold under the void decree of distribution. The contention that the probate was without due notice has three different aspects: In the first place, it is urged that no notice of the time and place of the hearing of the petition for the probate of the will was published as required by law, and in that connection it is shown that

the only proofs of such publication are the recitals in the probate decree to the effect that due notice was given, and a document in the form of an affidavit, in which the facts of the publication of the notice in a certain San Francisco daily newspaper purport to be fully stated over the name of one Cosgrave, who is represented to be the clerk of the publisher of the newspaper. This document purports to be signed by Cosgrave, and recites that it is made under oath, but the certificate or jurat attached is in blank.

In the next place, it is shown that while, in this alleged notice, the place designated for the hearing was department 10 of the superior court of San Francisco, the proceeding was, upon the day fixed for such hearing, by order, and without further notice, transferred to department 9, which sat in the same building, but in a different part thereof. And, lastly, it is represented that while the hearing was not concluded until August 17, 1897, previously, upon two different dates, namely, July 22d and August 16th, the court adjourned the hearing sine die, and that there was no notice of any further hearing after July 22, 1897.

[4] Assuming that the first objection is not well taken, the second and third are without merit, and may be summarily disposed of. If the superior court, by reason of the due publication of the notice as required by law, or the appearance of the necessary parties, acquired jurisdiction on November 30, 1897, the day set for the hearing, it had in its department No. 10 the jurisdiction, among other things, to transfer the proceeding to department 9. If such action was improvident or arbitrary, at most it constituted only error in procedure; it was not jurisdictional. And if we were to adopt the strained, and, as it appears to us, inadmissible, construction which the plaintiffs place upon the orders of July 22d and August 16th, they could not be held as operating to oust the court of jurisdiction. Apparently the appellants would have us subject the proceedings of the superior court to the rigid rules applicable to inferior courts of limited jurisdiction, or to criminal procedure in felony cases. In courts of record presumptions of regularity are indulged, and therefore, jurisdiction being once acquired, unless the record affirmatively shows the contrary, it will be presumed that the parties had due notice of all subsequent proceedings. The precise point was considered and decided adversely to the appellants' contention in Re Davis, 151 Cal. 318, 86 Pac. 183, 90 Pac. 711, 121 Am. St. Rep. 105.

The real, and substantially the only, question therefore is whether the superior court ever acquired jurisdiction. Incidentally it may be observed that upon this branch of the inquiry the averments of the bill seem in material particulars to be wholly at variance with the history of the controversy as it is set forth in the published opinions of the Supreme Court of the state (see especially In re Davis, 151 Cal. 318, 86 Pac. 183, 90 Pac. 711, 121 Am. St. Rep. 105), and, if the record of the probate proceeding is fully and faithfully pleaded, it is somewhat remarkable, to say the least, that a defect so patent should, in the several attempts which have been made unsuccessfully to assail the validity of the probate, have escaped detection until shortly before

the commencement of the present suit. But we are to answer the question not upon conjecture, but upon the showing made by the bill, and this we proceed to do. It is important to bear in mind the limitations of the contention which the plaintiffs make under this head; it is wholly independent of the question of the validity or invalidity of the will. The point is that the probate judgment is void, and, if the reasons assigned in support of the contention are sound, they must be sustained, even though the will may in fact and in law be entirely free from objection. And it follows as a matter of course that, for the time being, we must put out of view not only the charge of fraud or forgery in the execution of the will, but the charge of fraud in procuring the probate, for, as we have seen, such inquiries are not within our jurisdiction, and besides they are presently immaterial. Nor can we consider the averments of the bill in so far as they contradict or add to the record in the probate proceeding. To escape the operation of the principles we have already discussed, and in order that the point may have any independent merit, it must affirmatively appear upon the face of the record itself that the judgment is void, and the challenge of the plaintiffs is upon this ground. In this view the heirs at law of the deceased are, without any administration of his estate, suing for the recovery of the property, which is held by the devisees, under an apparently valid will. We have the power neither to administer the estate, nor to adjudicate the validity of the will, for these are both subjects of probate jurisdiction, which is vested exclusively in the superior courts of the state. Whether, under such conditions, we could, or, in the light of other features of the record, we should, attempt to grant any equitable relief, even if the probate proceedings were held to be void, are questions not free from grave doubt; but we put them aside, for, upon a careful reconsideration of the principal point, we have been unable to yield to the view that the probate is void upon its face, and for the following reasons:

[5] (1) Because due notice of the hearing appears to have been given. As already remarked, the superior court, proceeding in probate, is a court of record, and its judgments are entitled to all of the presumptions which are usually indulged in favor of the judgments of courts of general jurisdiction. Section 1303 of the Code of Civil Procedure of California provides that, when a will is offered for probate, the clerk must set the petition down for hearing, and give notice by publication. Section 1306 is as follows:

"At the time appointed for the hearing, or the time to which the hearing may have been postponed, the court unless the parties appear, must require proof that the notice has been given, which being made, the court must hear testimony in proof of the will."

No particular form for proving that the notice has been given is here prescribed. True, by section 2010 of the same Code, it is provided generally that evidence of the publication of a document or notice "may be given by the affidavit of the printer," etc., but such affidavit is not conclusive (section 2011), nor is the method of proof declared to be exclusive. Moreover, there is no requirement in relation to the probate of wills that the proof of publication shall be placed on

record in any prescribed form. The court "must require proof," is the mandate of the statute; and while the court may accept an affidavit, surely the sworn testimony of the printer, together with the newspaper files as exhibits, would furnish a much higher degree of proof than an affidavit. In Wise v. Williams, 88 Cal. 35, 25 Pac. 1064, the court resorted to such proof to overthrow an affidavit. The judgment in question, among other things, expressly declares that:

"It was proved to the satisfaction of the court that notice of said hearing had been given as required by law."

It is well settled in California that recitals in judgments of superior courts, showing the due service of process, or other jurisdictional facts, are conclusive against collateral attack. McCauley v. Fulton, 44 Cal. 361; In re Newman, 75 Cal. 220, 16 Pac. 887, 7 Am. St. Rep. 146; McHatton v. Rhodes, 143 Cal. 280, 76 Pac. 1036, 101 Am. St. Rep. 125; Grannis v. Superior Court, 146 Cal. 254, 79 Pac. 891, 106 Am. St. Rep. 23. And in Applegate v. Lexington, etc., Mining Co., 117 U. S. 255, 6 Sup. Ct. 742, 29 L. Ed. 892, it is said:

"Where a court of general jurisdiction is authorized in a proceeding, either statutory or at law or in equity, to bring in, by publication or other substituted service, nonresident defendants interested in or having a lien upon property lying within its territorial jurisdiction, but is not required to place the proof of service upon the record, and the court orders such substituted service, it will be presumed in favor of the jurisdiction that service was made as ordered, although no evidence thereof appears of record, and the judgment of the court, so far as it affects such property, will be valid."

To escape this presumption, however, the appellants, relying upon the presence in the files of the incomplete affidavit hereinbefore referred to, seek to invoke the rule that the general recitals in a judgment must yield to specific facts inconsistent therewith, when disclosed by other parts of the judgment roll; but upon a careful examination of the decisions we are convinced that the case does not fall within this rule. In some of the authorities cited the question arose upon appeal, and for that reason they present materially different considerations. The others readily fall into two classes: The one embraces cases where, notwithstanding the recital of due service, the affidavit of publication or the officer's return, as the case may be, affirmatively shows that the requirements of the statute were not complied with, as, for instance, In re Charlebois, 6 Mont. 373, 12 Pac. 775. It is too plain for controversy that this is not such a case. The second class consists of cases where the statute prescribes an exclusive method for making proof, as for example the affidavit of the printer, and such affidavit is upon file, but is either improperly executed or is executed by an unauthorized person, or fails to show all of the facts and conditions required by the statute. Perhaps Steinbach v. Leese, 27 Cal. 295, and Settlemier v. Sullivan, 97 U. S. 444, 24 L. Ed. 1110, are quite as favorable to the appellants' contention as any that can be found; but clearly they are inconclusive upon the precise point here under consideration. Naturally the decisions are not uniform, for each case has its own peculiar facts, and not infrequently the decision turns upon some distinctive provision of the local statutes. For ex-

ample, in the Settlemier Case, replying to the suggestion that the recital in the judgment disclosed due service of process, the court said that the "recital must be read in connection with that part of the record which gives the *official evidence prescribed by statute.*" For the reason that it was not supported by "the official evidence (as the same appeared in the record) prescribed by statute," the recital was held insufficient to disclose jurisdiction.

But in the present case, as we have already seen, the statutes neither prescribe the method in which the proof must of necessity be made, nor require that it be made of record in any prescribed form, and it is unnecessary therefore to indulge the somewhat violent presumption that the court considered the incomplete affidavit at all, or considered it and nothing else in making the finding of due publication. We do not overlook the averments in the bill that no notice was in any wise given, and that the court received this incomplete affidavit as proof of publication of notice; but if by such averments it is sought to contradict or supplement the showing made upon the face of the record, they must be rejected, for we are here considering only the contention that the probate is void upon its face, and therefore subject to collateral attack. As expressly stated in their brief, the position of the plaintiffs is that:

"The presence of the unverified pretended affidavit in the record of the pretended judgment of probate controls and overcomes the recital therein, * * * and is, on collateral inquiry, conclusive proof that the pretended judgment was made without notice."

The averments referred to must therefore be deemed to be merely a statement of the presumptions and inferences which, in the mind of the pleader, necessarily arise upon the face of the record, and in fact add nothing to the record.

[5] (2) In the second place, it is thought the probate is not void as against these plaintiffs, for the reason that they voluntarily appeared in the proceeding, challenged the validity of the will, and prosecuted their contest to an unsuccessful issue. The position of the plaintiffs is that the probate of the will is essentially a proceeding in rem, that the statutory notice is a prerequisite of jurisdiction, and that the notice cannot be waived by voluntary appearance, because there is no means of judicially determining whether all who are entitled to contest the will have appeared, and authority to proceed does not vest until jurisdiction is complete against all the world. They vigorously assail the statement made in the original opinion that, after their appearance, the proceeding, in so far "as it concerned" them, "was virtually one inter partes," both as being inconsistent with other parts of the opinion, and as being without support of authority. It is true that the proceeding is primarily and essentially one in rem; but, when an heir appears to oppose the probate and institutes a contest, it thenceforth presents some of the aspects, and involves many of the considerations characteristic of, suits inter partes. That in many branches of litigation a proceeding in rem is converted into a personal suit by the appearance of the defendant is a matter of frequent occurrence and familiar observation. Fitzgerald v. Fitzgerald, 137 U. S.

98, 11 Sup. Ct. 36, 34 L. Ed. 608; Cooper v. Reynolds, 10 Wall. 308, 19 L. Ed. 931. But the real question with which we are here concerned, concretely stated, is whether the subject-matter of a probate proceeding is such that the issues which may be raised between the parties whose interests are affected by the will are susceptible of severance, and therefore to separate trials, or whether it is of such a nature that the presence of all interested persons is not only necessary but indispensable, and that therefore the court is without jurisdiction to adjudicate an issue between any of the parties without first acquiring jurisdiction over all of them. The question is not free from most perplexing considerations.

It must be conceded that we should not, for light reasons, adopt a view by which parties may appear in a court of competent jurisdiction, fully try out their controversy with their adversaries, and, upon being defeated, flout the adverse judgment because possibly there may be some other claimant who has not been properly brought before the court, and who, for that reason, cannot be bound by the proceeding. In every substantial sense the plaintiffs have had their "day in court." If we give place to the theory that, in a contest between devisees and a part only of the heirs (the other heirs not being before the court), the judgment operates as an estoppel against all who appear, there is no substantial prejudice to any of the heirs; those who appear have full opportunity to wage their claims, and the rights of the others remain wholly unaffected. True, the devisees claiming under the will are, if successful, subjected to the peril of further contests. and possibly of having the fruits of the first contest swept away. But that is a penalty which not infrequently falls upon plaintiffs who carelessly or inadvertently fail to make parties defendant all persons claiming interests in the subject-matter of the suit. In the view that notwithstanding the failure of the first contest a subsequent successful contest by other parties would wholly nullify the will, and thus operate in favor of all of the heirs, the defeated contestant might profit by a series of contests, but in no contingency could he be prejudiced.

The California cases are wholly indecisive of the question. In view of the considerations just stated, In re Smith's Estate, 122 Cal. 462, 55 Pac. 249, which is perhaps the most persuasive of the cases cited, is, in its facts, readily distinguishable, because the order there held to be void necessarily affected the interests of persons who were without notice, and did not appear. In the Cobb Case, 49 Cal. 599, it was simply held upon appeal that it was error for the court to proceed without having before it all of the interested parties. Admittedly all interested persons are necessary parties, and, if for no other reason, to avoid a multiplicity of trials, they should all be before the court, and it is error not to bring them in. But is their presence a jurisdictional prerequisite? Randolph v. Bayne, 44 Cal. 366, lends some support to plaintiffs' contention, but the facts are so different that it is far from being controlling; and the same may be said of the Carpenter Case, 127 Cal. 582, 60 Pac. 162. Upon the other hand, Abila v. Padilla, 14 Cal. 103, Samson v. Samson, 64 Cal. 327, 30 Pac. 979, Curtis v. Underwood, 101 Cal. 669, 36 Pac. 110, and the Estate of

Ricks, 160 Cal. 471, 117 Pac. 539, while favorable to defendants, are inconclusive. More or less directly in point, and to the same effect, are the Wisconsin cases O'Dell v. Rogers, 44 Wis. 136, and Flood v. Kerwin, 113 Wis. 673, 89 N. W. 845, and the Michigan case Rice v. Hosking, 105 Mich. 303, 63 N. W. 311, 55 Am. St. Rep. 448, and the Alabama cases Walker v. Jones, 23 Ala. 448, and Reese v. Nolan, 99 Ala. 203, 13 South. 677. Some light may be drawn from the statutes.

In section 1306 of the Code of Civil Procedure, quoted supra, it is provided that, at the time set for the hearing, "the court, *unless the parties appear,* must require proof that the notice has been given, which being made, the court must hear testimony," etc. Now it is obvious that, if plaintiffs' argument in its entirety is sound, the clause, "unless the parties appear," is rendered ineffective and meaningless, for if, as is the contention, the court cannot proceed until it has acquired jurisdiction as against all the world, and if there is no means of determining when all persons entitled to be heard have appeared, in no contingency could the court proceed until it had proof of the required notice, be there never so many actual appearances. The impropriety of adopting a view which would make a nullity of this clause is the more apparent when it is remembered that the clause was not embraced in the section as originally enacted, but was interpolated by amendment, in 1873; and it is not perceived how we can give it practical effect unless we hold that by an appearance the court becomes vested with jurisdiction to proceed so far as concerns the rights of the parties appearing. Of a somewhat similar import is this further consideration: In addition to the published notice prescribed by section 1303, section 1304 requires that copies of the notice be mailed to heirs resident in the state, at their places of residence, "if known to the petitioner," or, if the residence is unknown, then such notices may be deposited in the post office at the county seat. Under plaintiffs' contention, an inadvertent omission of the name of one of the heirs, or a mistake in an address, would operate to render the whole proceeding void, and void not only as against the person who is without due notice; but as against all the world, including those who have had their day in court; nor could such person waive the defect or ratify the proceeding, or in any other way give to it validity or effect. A rule having consequences so harsh would seem to be out of accord with the spirit of modern judicial procedure, unless supported by the most cogent reasons. The only substantial ground upon which it can be made to rest is that a will is an indivisible entity, which it either valid or invalid as against all the world, and that therefore a judgment establishing its validity must be good against all the world, or be without any efficacy at all. But while in abstract theory much may be said for this view, it is in direct conflict with one branch of the probate system established by the statutes of California, which in principle cannot be distinguished from the proceeding here under consideration. We refer to sections 1327 and 1333 of the Code of Civil Procedure, which provide that, notwithstanding the preliminary probate, such as that which was had in this case, any party in interest may later in-

stitute a contest assailing the validity of the will. Section 1333 reads as follows:

"If no person, within one year after the probate of a will, contest the same or the validity thereof, the probate of the will is conclusive; saving to infants and persons of unsound mind, a like period of one year after their respective disabilities are removed."

In so far as the question under consideration is concerned, the contest here provided for is indistinguishable from the subject-matter of the preliminary probate. In re Estate of Davis, 136 Cal. 590, 69 Pac. 412. In either case the validity of the will is involved, and nothing else; and, if in the one case the actual or constructive presence of all the parties is a prerequisite of jurisdiction, the reasons are quite as cogent and the necessity is equally great in the other. But clearly in the contest provided for in these sections a severance is contemplated. Adults must assert their claims within one year; infants cannot be compelled to do so. And in the case of a number of infant heirs they might, as they severally reach the age of majority, institute successive contests. Administering this statute in a contest brought by a minor heir, after the lapse of a year subsequent to the probate of the will, the Supreme Court of California, in the case of Samson v. Samson, 64 Cal. 327, 30 Pac. 979, found "no difficulty in avoiding the probate so far as the interests of the contesting heir are concerned, and permitting it to stand so far as concerns the heirs who have lost their rights by lapse of time." And in that connection the court quoted with apparent approval from Bailey v. Stewart, 2 Redf. Sur. 227, as follows:

"It is quite clear to my mind that, where a petition shows a case conferring jurisdiction, the surrogate has authority to act in the premises, and it is not true to say that the subsequent discovery of persons, who were entitled to an interest in the estate as heirs, would render the decree void. Such a state of facts would only render the decree inoperative, as to the person so discovered to be entitled. Suppose, as an illustration, that a testator should die leaving, as is supposed, but three children, and upon that assumption the will should be probated, and many years thereafter it should turn out that a fourth child, supposed to be dead, was living; can it be seriously contended that such a discovery would render the probate void? If so, most disastrous consequences might result to the estate and to those who had become possessed of it. The most that could be said in such a case would be that the probate might be avoided so far as the interests of the heir not cited are concerned, and that the probate for that purpose would be set aside, if at all, on appeal to the discretion of the surrogate."

Our conclusion is that the superior court, being vested with general jurisdiction in probate, has, upon the presentation of a will, accompanied by a proper petition for the probate thereof, and the appearance of qualified persons to contest the same, the power to proceed and to entertain such contest, and that under section 1306 of the Code of Civil Procedure the question whether all of the interested parties have appeared is, so far as those actually present are concerned, one which the court is required to decide, not before exercising jurisdiction, but in the exercise of the jurisdiction conferred by the appearance of those present, and that therefore error in that regard, if any be committed, is not jurisdictional, but is an irregularity in procedure subject to review only on appeal or by motion in the proceeding itself; and further

that a final judgment in such contest, adverse to the contestants, constitutes a valid estoppel against them. There being no present necessity therefor, we do not consider the question whether an unsuccessful contestant takes the benefit of a subsequent successful attack upon the will made by a qualified person of whom the court did not originally have jurisdiction. The logic of the Samson Case seems to require that the question be answered in the negative, but we do not go beyond the necessities of the case, and hold only that the plaintiffs, having appeared and resisted the probate, are estopped from questioning the validity of the will or the probate thereof in a collateral attack.

Fourth. The fourth independent ground relied upon is that the will is upon its face void, because it does not disclose the place, as well as the time, of its execution; the contention being that both place and time are necessarily implied by the term "dated." Upon this point, however, we find no reason for adding to the discussion or modifying the conclusion set forth in the original opinion. We entertain no doubt that the instrument is in full compliance with the statute.

[7] Fifth. The last contention is that the beneficiaries named in the will feloniously caused the death of Davis for the purpose of seizing upon and appropriating his estate; but it is sufficient to say that there is no such averment in the bill. The allegation of circumstances which may, but do not necessarily, point to an ultimate fact, does not amount to an averment of such fact. It may be added that, if we accept the plaintiffs' construction of the pleading, the point is necessarily embraced in the first contention discussed, and is ruled by the conclusion there stated.

It follows that the decree of the Circuit Court dismissing the bill was properly made, and it will therefore be affirmed. Dated this 22d day of March, 1913.